THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* SIXTY-SEVEN PACKAGES OF DRY GOODS. JULES LEVOIS, CLAIMANT.

The 66th section of the act of 1799, (1 Stat. at Large, 677, ch. 22,) which declares that "if any goods, wares, or merchandise, of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof, at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, &c., or the value thereof, to be recovered of the person mak-

ing the entry, shall be forfeited," has not been repealed by any provision in the act of 1842, or in any of the duty acts, but still exists in full force and effect.

THIS case was brought up, by writ of error, from the circuit court of the United States for the eastern district of Louisiana.

A libel of information was filed in the district court, by the collector of the port of New Orleans, on behalf of himself and the United States, for the condemnation and forfeiture of sixty-seven packages of goods, on account of an alleged fraud upon the revenue, charging, among other things, in the information, that the goods were entered at the custom-house, upon the production of an invoice, in which they were invoiced at a less sum than the actual cost thereof at the place of exportation, with a design to evade the duties.

Jules Levois, of New Orleans, filed a claim to the goods, and the cause came up for trial in March, 1850, when the jury, under the instructions of the court, found a verdict for the claimant.

A bill of exceptions was taken by *Mr. Hunton,* district attorney of the United States, which, being short, is here inserted, as follows : —

Be it remembered, that on the trial of this cause the plaintiff offered in evidence the following documents, numbered as follows : —

No. 1. Warehouse entry of five packages with extract invoice.
  " 2. Import entry of sixty-two packages.
  " 3. Report of United States appraisers.
  " 4. United States appraiser's valuation.
  " 5. Merchant appraiser's        do.
  " 6: Copy of interrogatories propounded by appraisers to P. D. Duval.
  " 7. Call for letters.
  " 8. Call for reply to interrogatories.
  " 9. Letter from Mr. Duval to United States appraisers.
  " 10. Paper found by appraisers in case No. 81.
  " 11. Invoice in which the entries were made.
The following witnesses were introduced : —

R. J. Canfield, who stated that he was one of the appraisers in the custom-house of New Orleans, proved the several documents offered in evidence ; that P. D. Duval, the partner or agent of claimant, made the entry at the custom-house ; his refusal to answer the interrogatories propounded ; stated that from his experience as appraiser, he was familiar with the valuation and cost of such goods as were contained in the invoice on which the entries were made ; stated that the goods were invoiced at less than the actual cost, as he believed, and at less

than their actual value in the foreign market from whence they were imported, to the extent shown by the valuation offered in evidence; that he had made a particular examination of the several packages seized. He proved that the paper marked No. 10 was found by the appraisers, in case No. 81, and that the same articles contained in that paper were invoiced at

Philip Simms, A. Duthel, E. D. Hyde, Mr. Letchford, were also introduced as witnesses on the part of the United States, all of whom were importing merchants in the city of New Orleans, and had imported like goods as those seized, from Liverpool, about the same time; some had received importations by the same ship that brought out those in controversy; all of them confirmed the merchants' valuation, as shown in paper No. 5, and concurred in saying that the said goods were invoiced at least twenty-five per centum lower than actual cost or value in the foreign market. It was proven that cotton goods had advanced during the spring and summer of 1849. Mr. Rifflard said, that all of the goods in the invoice were invoiced at less than the actual value; some of them, however, not more than ten or fifteen per centum, in his judgment. And thereupon, the court instructed the jury as follows, namely: —

1. That the 66th section of the act of congress of the 2d March, 1799, in so far as it imposes the penalty of forfeiture of any goods, wares, and merchandise, of which entry shall have been made in the office of a collector, and which shall not be invoiced according to the actual cost thereof, is inconsistent with, and repugnant to, the 13th and 15th sections of the act of 1st March, 1823, imposing a penalty of additional duties on goods entered under fraudulent invoice; and in so far as said inconsistency and repugnancy existed, the said act of 1799 was repealed by said act of 1823.

2. That the said 66th section of the act of congress of the 2d March, 1799, was, to the same extent as aforesaid, repugnant to, and inconsistent with, the 17th section of the act of 30th August, 1842, and is, to the same extent, repealed by said act of 1842.

3. That the proceedings directed and authorized by the 17th section of the act of 1843, having been proved by the United States to have taken place against the merchandise therein alleged to be forfeited to the government, it was the duty of the collector to have levied and collected the additional duty which, by said 17th section, is imposed as a penalty on goods which shall be appraised, estimated, and ascertained to exceed the invoice value; that said penalty is inconsistent with, and repugnant to, the penalty of forfeitures, as imposed by any preceding law of congress; that the said section of said act of 1842,

and the other sections of said last-named act, do, by implication, repeal all previous provisions of all acts of congress imposing the penalty of forfeiture of merchandise which is falsely valued in an invoice, or of which the actual cost has not been stated in the invoice under which their entry is made.

And also instructed the jury that there was at present no law in force authorizing the forfeiture of the said goods for the causes set forth in the libel. To which instructions and charge, the United States, by their attorney, except, and pray that this bill may be signed, sealed, and entered of record; which is done.

(Signed)                    THEO. H. McCALEB,   [Seal.]
                                        *United States Judge.*

In May, 1853, the cause came on for trial before the circuit court of the United States, when the judgment of the district court was affirmed.

A writ of error brought the case up to this court.

It was argued by *Mr. Cushing* (attorney-general) for the United States. No counsel appeared for the appellee.

*Mr. Cushing* reviewed the provisions of the act of March 1, 1823, 13th and 15th sections, (3 Stat. at Large, 734, ch. 2,) and the 17th section of the act of 30th August, 1842, (5 Stat. at Large, 564, ch. 270,) and then proceeded with the argument.

Such are the provisions of the statutes relied on as repealing, by implication, the 66th section of the act of 1799.

It is to be noted that the said 66th section enacts the forfeiture of the goods, " or the value thereof," of which entry shall have been made in the collector's office, " with design to evade the duties thereupon, or any part thereof." But whether the collector shall or shall not seize and prosecute the goods as forfeited, or shall collect and receive the duties arising upon the valuation, when ascertained by two reputable merchants to be appointed for that purpose, as required in that 66th section, are matters left to the judgment and discretion of the collector. If he retains the goods, and prosecutes as for a forfeiture thereof, or the value thereof, he acts at his peril; it is his own act, for which he will be personally responsible in damages, if he misjudges and seizes, and prosecutes by wrong, and without probable cause, upon an allegation of " design to evade the duties thereupon." The *quo animo* with which the entry of the goods, not invoiced according to their actual cost, shall have been made, the design to evade the duties, constitute the offence for which the forfeiture of the goods or their value is declared in this 66th section. The hazard which a collector must incur

personally, by prosecuting for a forfeiture, is not forefended by the appraisement made by two reputable merchants, because "such appraisement shall not be construed to exclude other proof upon the trial of the actual and real cost of the said goods at the place of exportation." Moreover, the two merchants are not to inquire as to the "design to evade the duties."

By this 66th section, the duties are to be paid according to such valuation as shall be ascertained, not according to the invoiced value, if the collector does not deem it expedient to prosecute for a forfeiture. So, under the acts of 1823 and 1842, relied upon, the collector has an election to prosecute for a forfeiture or not, upon allegation of "design to evade the duties." If he elects not so to prosecute, then he must have collected under the act of 1823, or under the act of 1842, the additional duty of fifty per centum.

So the 9th section of the act of May, 19, 1828, (4 Stat. at Large, 274, ch. 55,) imposed an additional duty of fifty per centum, if the appraised value of the goods at the time purchased, and place from which they were imported into the United States, exceed the invoiced value by ten per centum. Yet this statute did not take away the election of the collector to prosecute for a forfeiture of the goods, or their value, under the 66th section of the act of 1799, if, in his opinion, the goods had been entered at the custom-house, upon an invoice undervaluing them, "with design to evade the duties thereupon, or any part thereof."

In the act of 30th July, 1846, (9 Stat. at Large, 43, ch. 74, sec. 8,) it is made the duty of the collector to cause the dutiable value of imports "to be appraised and estimated and ascertained in accordance with the provisions of existing laws ; and if the appraised value thereof should exceed, by ten per centum or more, the value so declared on the entry, then, in addition to the duties imposed by law on the same, there shall be levied, collected, and paid, a duty of twenty per centum *ad valorem* on such appraised value." This act does not take away the election of the collector to prosecute for a forfeiture of the goods, or their value, under the 66th section of the act of 1799, if in his judgment he can sustain the charge, that the goods were entered at an undervaluation, "with design to evade the duties thereupon, or any part thereof."

The statutes which impose an additional (or penal) duty, in case the estimated and ascertained value of the goods exceeds by a certain per centum their value, as declared in the entry with the collector, do not require, as a prerequisite to the collection of such additional (or penal) duty, that the entry shall have been made "with design to evade the duties thereupon."

8*

The 66th section of the act of 1799, defines a higher offence against the revenue laws; it requires that the entry of the goods shall have been made " with design to evade the duties thereupon," and for such design inflicts the forfeiture of the goods, " or the value thereof," if the collector shall prosecute for and establish such design.

In the case of Wood *v.* The United States, January term, 1842, (16 Pet. 363–366,) the question of the repeal of the 66th section of the act of 1799, by implication, arising out of subsequent statutes, is fully discussed, and every position taken by the judge of the district court is, in effect, negatived. It is useless to say more in this case, than that the principles decided in Wood *v.* The United States are applicable to the acts of 1842 and 1846, although these have been passed subsequently to that decision of the supreme court.

There is no positive repugnancy between the provisions of the 66th section of the act of 1799, and those of the subsequent laws. These new laws are merely affirmative, cumulative, and auxiliary to the 66th section of the act of 1799; not inconsistent with a forfeiture of the goods or their value, where an entry shall have been made in the office of the collector " with design to evade the duties thereupon, or any part thereof." There is nothing in any of the statutes, subsequent to the act of 1799, to compel the collector to demand and receive the duties, with the additional or penal duties, in cases where goods are entered for duty at an undervalue, " with design to evade the duties thereupon, or any part thereof;" nor to inhibit the collector from prosecuting for the forfeiture of the goods, or their value.

" The provision in the 66th section is intended to suppress fraud upon the revenue. The other acts are designed to be auxiliary to the same purpose. There is no repugnance between the provisions; and to construe the latter, as repealing the former, would be to construe provisions to aid in the detection of fraud in such a manner as to promote fraud, by cutting down provisions of a far more general and important character, and essential to the security of the revenue." Wood *v.* The United States, 16 Pet. 365, 366.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the circuit court of the United States for the eastern district of Louisiana.

A libel of information was filed in the district court, by the collector of the port of New Orleans, on behalf of himself and the United States, for the condemnation and forfeiture of sixty-seven packages of goods, on account of an alleged fraud upon the revenue, charging, among other things, in the information,

that the goods were entered at the custom-house upon the production of an invoice, in which they were invoiced at a less sum than the actual cost thereof at the place of exportation, with a design to evade the duties.

On the trial, after evidence was given on the part of the libellants tending to prove the facts charged in the information, the court charged the jury, that the 66th section of the duty act of 1799 was repealed by force of subsequent statutes, and that, at present, there was no law in existence providing for a forfeiture of the goods for the causes set forth in the libel. The jury found, accordingly, for the claimant.

This ruling was carried up on error to the circuit court, where the judgment was affirmed.

The 66th section of the act of 1799, so far as it is material in the case, is as follows: —

" That if any goods, wares, or merchandise, of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, &c., or the value thereof, to be recovered of the person making the entry, shall be forfeited."

It was held, in the case of Wood against the United States, 16 Pet. 342, which was an information founded upon this section, that it was then in force, and the property there seized was condemned under it. The goods in that case had been entered at the custom-house in 1839 and 1840. The duty act of 1842, which has since been passed, is supposed to operate a repeal of the section, by implication.

The 19th section of that act is mainly relied on, which is as follows: —

" That if any person shall knowingly and wilfully, with intent to defraud the revenue of the United States, smuggle or clandestinely introduce into the United States, any goods, &c., subject to duty by law, and which should have been invoiced, without paying or accounting for the duty, *or shall make out, or pass, or attempt to pass, through the custom-house, any false, forged, or fraudulent invoice*, every such person, his, her, or their aiders and abettors, shall be deemed guilty of misdemeanor, &c., punishable by fine and imprisonment."

The invoice mentioned in the two sections (the 66th and 19th) is a very important document in the entry and passing of goods at the custom-house.

The 36th section of the act of 1799 made it the duty of the person making the entry to produce to the collector the original invoice, in the same state in which it was received; and also, to make oath that it was the true, genuine, and only invoice re-

ceived, and was in the actual state in which it was received, and that the deponent did not know of any other invoice or account of the goods different from that produced. And the 1st section of the duty act of 1818 further provided, that no goods subject to duty should be admitted to entry, unless the original invoice of the same was presented to the collector. The same provision is found in the 1st section of the act of 1823.

The 4th section of the last act also prescribes the oath substantially like the one in the act of 1799, above referred to, except somewhat enlarged.

The 4th section of the act of 1830, in the case of goods subject to duty, provided, that if any package should be found to contain an article not described in the invoice, the same should be forfeited. This provision is modified by the 21st section of the act of 1842, which saves the forfeiture, if the appraisers shall be of opinion that the omission in the invoice was not with a fraudulent design.

This brief reference to the several acts is sufficient to show the great importance attached to this document, in securing the collection of the proper duties upon foreign importations, and the great care that has been taken to insure the production to the collector of the true, genuine, original one, and that it should be in the actual state and condition in which it was received by the owner, consignee, or agent making the entry.

Now, the 66th section of the act of 1799, dealing with this document, forfeits the goods of the party entered at the custom-house, " if not invoiced according to the actual cost thereof at the place of exportation, with a design to evade the duties."

The 19th section of the act of 1842 subjects the party to a misdemeanor, and punishable as such, concerned in making an entry, who, with intent to defraud the revenue, " shall make out, or pass, or attempt to pass, through the custom-house, any false, forged, or fraudulent invoice."

The former section has reference to the invoice so far as material to determine the forfeiture, simply with a view to the actual cost of the article at the place of exportation, without regard to the question whether the document itself is the true and genuine one or not. If the goods described in the invoice are invoiced under the cost value, with the design stated, the forfeiture takes place. The object is to prevent frauds upon the revenue in passing goods through the custom-house, by means of this device, at an undervaluation.

The latter provision is different, and has reference to the frauds that may be committed in passing or attempting to pass the goods upon the production of invoices not genuine; not the true, original invoices, but those made out for the occasion with a design to impose upon the collector and other officers.

The acts of 1799 and 1823 sought to prevent this species of fraud, by requiring the production of the original invoice, with the oath of the party superadded, that it was the true, genuine, and the only one received, and in the actual state in which it was received.    This, although the party was subjected to the penalty of perjury, in case of false swearing, seems not to have afforded the necessary protection; and the present provision, for the first time, has been enacted, subjecting the person to a misdemeanor who shall, with intent to defraud the revenue, "make out or pass, or attempt to pass, through the custom-house any false, forged, or fraudulent invoice," manifestly directed against the production and use of simulated invoices, and those fraudulently made up for the purpose of imposing upon the officers in making the entry.

The whole scope of the section confirms this view.    It first makes the smuggling of dutiable goods into the country a misdemeanor; and, secondly, the passing or attempt to pass them through the custom-house, with intent to defraud the revenue, by means of false, forged, or fraudulent invoices; the latter is an offence which, in effect and result, is very much akin to that of smuggling, except done under color of conformity to the law and regulations of the customs.

In the interpretation of our system of revenue laws, which is very complicated, and contains numerous provisions to guard against frauds by the importers, this court has not been disposed to apply with strictness the rule which repeals a prior statute by implication, where a subsequent one has made provision upon the same subject, and differing in some respect from the former, but have been inclined to uphold both, unless the repugnancy is clear and positive, so as to leave no doubt as to the intent of congress; especially in cases where the new law may have been auxiliary to and in aid of the old, for the purpose of more effectually guarding against the fraud.    This is the doctrine to be found in the case of Wood *v.* the United States, already referred to, and in several subsequent cases.  3 How. 197; 16 Ib. 150.

It has been supposed that the 8th section of the present act of 1846, which imposes an additional duty of twenty per centum for undervaluation, works a repeal of the 66th section of the act of 1799.    But this provision has been part of the revenue system e er since the act of 1818, with the exception of a few years, and has never been understood to have the effect claimed. On the contrary, the section has been regarded as in force, and has been in practical operation during all this time, notwithstanding the imposition of other additional duty.    It was so considered in the case of Wood *v.* The United States.    This additional duty is imposed in case the appraised value exceeds

the invoice price of the goods ten per centum, irrespective of the question of fraudulent intent. Undoubtedly, if this additional duty has been levied upon the goods by the government, it cannot forfeit them under the 66th section; but, if the collector is satisfied that the undervaluation in the invoice has been made with intent to evade the duties, instead of levying the additional duty, a forfeiture may be declared. It will be observed, also, that the forfeiture may be declared in cases of undervaluation where it is less than ten per centum of the invoice price, provided the fraudulent design exists.

We are satisfied that there is no provision in the act of 1842, or in any of the duty acts, operating as a repeal of the 66th section of the act of 1799, but that it still exists in full force and effect. The judgment of the court below must therefore be reversed, and record remitted for further proceedings, in conformity to this opinion.

Mr. Justice CAMPBELL dissented.

This court, in a series of cases arising upon a succession of frauds perpetrated by a combination of persons in England and this country, determined, that the 66th section of the act of 1799, and the 4th section of the act of 1830, as modified by the 14th section of the act of 1832, were not repugnant, but formed a harmonious system for the prevention of frauds upon the revenue. 16 Pet. 342; 3 How. 211; 4 Ib. 242, 251.

The system formed was: 1. By the act of 1799, if an invoice contains goods that are undervalued with design to evade duties, the goods so undervalued are forfeited. 2. By the acts of 1830 and 1832, if a package or invoice is made up with intent to defraud the United States, the package or invoice thus made up is forfeited.

The court in its opinions declared that the latter statutes apply only to the cases in which the fraudulent acts of the importer were discovered by the officers of the customs, in the opening and examination of the goods, in their transit through the custom-house; while the act of 1799 applies to the case of completed entries under false invoices, no matter when or where the detection took place, the suits were all for forfeitures where the goods had passed through the custom-house, with a regular entry and payment of duties, but upon false invoices, that is, importing on undervaluation.

In these entries, " a true and original invoice " was demanded by the collector, under the acts of congress then in force, and simulated and fraudulent invoices were punished, and upon which the assessment of duties was made. A true and original invoice, showing the first cost of the imports, formed the legal

basis for the estimate of the duties under these acts, and the production of this was the end which these enactments were designed to secure.

The tariff act of 1842 (5 Stat. at Large, 548,) was adopted after these decisions.

Its title signifies that its purpose, among other things, " was to change and modify existing laws imposing duties on imports," and all conflicting acts and parts of acts were expressly repealed. The frauds referred to in the cases cited, were accomplished by false representations of the cost of the import, in the invoice, and the danger of a forfeiture for an undervaluation did not prevent them.

The act of 1842 abolishes the " cost price at the place of exportation," as the basis of the estimate of duties, but employs the " market value," or " wholesale price," and provides appraisers, who were to ascertain these without regard " to any invoice whatever." To perform this office they were armed with inquisitorial powers, might call for merchants' books, letters, invoices, and papers, and examine, as witnesses, the parties in interest. False swearing was punished with the forfeiture of the import, and as a perjury.

Here, then, is the substitute for the invoice in the old system, in the ascertainment of the basis of the estimate, and these were the sanctions employed to secure its integrity.

The " true and original invoice " would, nevertheless, afford important evidence to ascertain the " market value," for, in a majority of cases, this would be the " cost." The production of the true invoice was still required in every entry. If the invoiced value differed from the appraised or market value, ten per centum, an additional penal duty now amounting to twenty per centum was exacted. This was to compel a fair exhibition of a " true invoice." This duty is collected without suit, depends upon the single fact of a variation of ten per centum between the market and invoice price, and has proved a most efficient instrument to prevent fraud. Besides, the duty may be collected in goods at the invoice rate, and thus the undervaluation would be corrected.

Finally, " if any person shall, wilfully and with intent to defraud, make out, or pass, or attempt to pass through the custom-house, a false, forged, or fraudulent invoice, every such person, his aiders and abettors, shall be deemed guilty of a misdemeanor, and shall be fined in any sum not exceeding five thousand dollars, or imprisoned for a term of time not exceeding two years, one or both, at the discretion of the court." (5 Stat. at Large, 565, Sec. 19.)

The invoice spoken of in this section of the act, is one which does not represent truly the facts the importer is bound to dis-

close at the date of his entry, and which are exhibited by an original and true invoice, and where the misrepresentation, whether by falsehood, forgery, or fraud, is with the design to evade the duties. It is admitted that this act provides for cases never before comprehended in any revenue law. For the attempt to defraud is punished as well as the consummate effort. The system of the act of 1842 is thus disclosed: It relies upon a home valuation made by public officers, upon evidence, instead of a representation of cost by the importer, as the basis of value in the assessment; and it provides, by forfeiture, and fine, and imprisonment, against the false testimony of the importer. It compels the production of the original and true invoice, by a penal duty, by fine and imprisonment, and the power to take payment of duties in undervalued goods.

There are, besides, provisions directed against smuggling. The act contains a selection from the various laws which had been passed by congress, whether in force or otherwise, and introduces new securities for the collection of the revenue.

Every case provided for by the system first considered, is distinctly and efficiently provided for in the act of 1842.

The principle applicable to such a state of facts is laid down by this court, in Norris *v.* Crocker, 13 How. 429. "That where a new statute covers the whole subject-matter of an old one, adds offences, and prescribes different penalties for those enumerated in the old law, that then the former statute is repealed by implication, as the two provisions cannot stand together;" and that where "a recent statute covers every offence found in the former act," and prescribes a new and different penalty, recoverable by indictment, "it is plainly repugnant."

The statement of the systems adopted at the different periods, will show that the importance of the 66th section of the act of 1799 had ceased, and that the retention of it, as a cumulative penalty, would accomplish no good, and serve only to involve the government in litigation, that the revenue officers might claim the penalty.

### *Order.*

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby reversed, and that this cause be and the same is hereby remanded to the said circuit court for further proceedings to be had therein in conformity to the opinion of this court.