Spear, J.
This, is an action in quo warranto wherein the relator, Thaddeus .E. Hoyt, claims to be one of the judges of the circuit court of the seventh circuit, and that the defendant, Willis S. Metcalfe, wrongfully keeps him out of possession of the office.
Relator’s right to the relief asked depends upon his title to the place sought.
The case was heard on a demurrer to the petition.
The material" facts as stated by the petition are that at the general election on the first Tuesday after the first Monday in November, 1902, Hon? Jerome B. Burrows was elected judge of the circuit court of the seventh circuit of the state for the full term of six years, the term to commence on the ninth day of February, 19031 He duly qualified and served until he resigned December 31, 1908, to take effect on the eighth day of January, 1909.
At the general election in November, 1908, Hon. Elias E. Roberts was elected to succeed Jerome B. Burrows for the term of six years *254 to commence on the ninth day of February, 1909. On the twenty-second day of November, 1908, before he had received a commission or qualified, said Roberts died.
On the fourth day of January, 1909, the resignation of Judge Burrows was accepted by the then governor of Ohio, Andrew L. Harris, and on the fifth day of January, 1909, Willis S. Metcalfe, the defendant, was appointed by Governor Flarris, the commission reciting that it was “for the term beginning January 9, 1909, and until his successor is elected and qualified, vice Jerome B. Burrows, resigned.”
The petition further avers that on the ninth day of February, 1909, the then governor of the state, Judson Harmon, appointed and commissioned the relator judge of' the said circuit court to fill the vacancy caused by the death of Judge Roberts; that the relator made demand of the defendant to be admitted to the office and was refused.
It should be added aliunde that the term of Governor Harris expired January 11, 1909, and that he was on that day succeeded by Governor FI armón.
If, upon this statement of facts, -the relator shows a title to the office of circuit judge of the seventh circuit, the demurrer should be overruled and the writ awarded. If he has failed to show such title the demurrer should be sustained and the petition dismissed.
Stated in general terms the relator bases his contention that he is entitled to the office principally upon the. claim that the death of the person elected to succeed Judge Burrows, after his election and before he entered upon the term or qualified, created a vacancy in the office at the commencement of the term to which he had been *255 elected and that consequently the tenure of the defendant, by virtue of his appointment, terminated at the end of Judge Burrows’ six-year term. Concessions at the oral argument have served to somewhat limit the field of necessary inquiry. It was not claimed that the appointment of defendant by Governor Harris was in any way irregular, but was conceded that it was in all respects regular, and therefore justified the acceptance of the office by the appointee, being duly qualified, and his continuance therein to and until the ninth day of February, 1909. It was further conceded that Judge Burrows, had he not resigned, would, under and by virtue of the constitution, (section 3 of article XVII), have held until after the November election of 1910. But it was and is insisted that an appointee commissioned at the time Judge Burrows’ resignation took effect could hold only during the remainder of the six years and that his right to the office did then cease and determine. This because the power to appoint, at the time the appointment was made, was limited to. filling the vacancy caused by the resignation of Judge Burrows for the remainder of his regular term, and the governor then in office was without authority to fill a vacancy in the succeeding term to begin on the ninth, of February, 1909, and after the then governor’s term had expired. The difference between the capacity to hold over of Judge Burrows and that of Judge Metcalfe being, as stated by the learned counsel, due to the provision of the third section of the amendment cited above, which provision anplied to Judge Burrows, but does not apolv to Judge Metcalfe because he was not an elected but an aopointed officer, and that the same capacity did not attach to him by reason of the former provision of the constitution (article *256 IV, section 13), because that provision had been abrogated by the amendment. This last proposition rests apparently upon the further claim that the decease of Judge Roberts, although at the time of its occurrence he had not qualified and the time for the commencement of the term to which he had been elected had not arrived, nevertheless created a vacancy in his term.
The provisions of the constitution which are thus supposed to be in antagonism are section 13 of article IV and article XVII. The first named provides:
“In case the office of any judge shall become vacant before the expiration' of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor is elected and qualified; and such successor shall be elected for the unexpired term, at the first annual election that occurs more than thirty days after the vacancy shall have happened.”
Article XVII, as summarized, provides: (a) Elections. — Elections for state and county officers shall be held in the even numbered years. (b) Length of Terms. — The term of office of judge of .the circuit court shall be such even numbered years not less than six as may be prescribed by the general assembly, (c) Extension of terms.— The general assembly may extend existing terms of office so as to effect the purpose expressed above. (d) Holding Over. — Every elective officer holding office when the amendment is adoptéd shall continue to hold such office for the full term and until a successor shall be elected and qualified as provided bv law. (e) Vacancies.— Any vacancy in an elective state office (other than member of the general assembly or governor) *257 shall be filled by appointment by the governor until the disability is removed, or a successor is elected and qualified. The election to be a general election for the office which is vacant occurring more than thirty days after the vacancy occurs and the person elected to fill the office for the unexpired term. Vacancies in other elective offices shall be.filled for the unexpired term in such manner as may be prescribed by law.
By section 18 of article III, vacancies occurring in the office “of state auditor, treasurer, secretary of state or attorney general are to be filled by the governor until the disability is removed, or a successor elected and qualified. The vacancy to be- filled by election at the first general election which occurs more than thirty days thereafter; the person chosen to hold the office for the full term, the auditor for four and the others for two jrears.
Manifestly there is no direct provision of article XVIT abrogating section 13 of article IV. Is any antagonism to be inferred? Surely there is none as to the first provision of article XVII, for that relates to a different subject. The same may be said as to the provision fixing length of terms and that relating to the extension of existing terms. That regarding vacancies in elective state offices is practically the equivalent of the provision of section 13- of article IV, although more comprehensive in its application. This leaves only to be considered section 3' which gives to’ elective officers holding office at the adoption of the amendment capacity to continue to hold until a successor shall be elected and qualified. Let us examine the amendment a little more at length.
*258 This latter clause does not in terms include one appointed to fill a vacancy, and if the appointee were relegated to this section for his authority to hold over there might be possible doubt as to its sufficiency. But the question is, does this clause necessarily deny to him that right? It is apparent that the main purpose intended by the amendment is to provide for the times of holding elections and for fixing length of terms. By reference to other sections of the constitution relating to elections it is apparent that two distinct changes in constitutional provision are made by the amendment, aside from the fixing of time when elections are to be held. One relates to the office of state auditor, treasurer, secretary and. attorney general. Where either office becomes vacant the successor is to be elected for the unexpired term instead of for a full term. The other requires that a vacancy in any elective state office shall be filled by election at the first general election for the office which is vacant that occurs more than thirty days after the vacancy has occurred instead of at an annual election. The provision that vacancies in other elective offices shall be filled in such manner as may be prescribed by law introduces no new rule, but is simply a provision inserted out of abundant caution to prevent possible misconception. A manner prescribed by law includes a manner prescribed by the constitution as well as by statute, and invokes the law of either character as it then stood as well as that which might thereafter be established. And we think it does not follow that section 2 of the amendment should be construed as providing an exclusive manner for filling vacancies. In the absence of an express provision in the amendment indicating the change insisted upon the section pboidd be confined to changes necessary to carry out the manifest purpose of the *259 amendment which was, as expressed in the preliminary resolution, to provide for “fixing the time of holding of elections and terms of office,” and as a result, as expressed in the first section and plainly indicated by the whole amendment, providing for the holding of elections for state and county officers in even numbered years and for other elective officers in odd numbered years, and authorizing the general assembly to extend existing terms of office so as to effect the purpose of section 1 of the article, that being the prime and controlling purpose of the changes thus indicated in the fundamental law, and indeed .the only purpose. We repeat as stated in the opinion in The State ex rel. v. Pattison, 73 Ohio St., 379: “We are not construing a new constitution. We are construing an amendment to the constitution, which displaces the constitution only so far as it expressly abrogates, or is irreconcilably in conflict with, former provisions.” It is not contended that article XVII in terns abrogates section 13 of article IV, and there is no warrant, as we think, for the assumption that there is manifest any purpose to abrogate it by the adoption of the amendment in question. Repeals by implication are not favored with respect to statutes, and for a stronger reason they should not be favored with respect to constitutional provisions. The repugnancy, to work a repeal, must be wholly irreconcilable, as the -intention to repeal will not be presumed, nor the effect of the repeal admitted unless the inconsistency is unavoidable. The State, ex rel., v. Dudley, 1 Ohio St., 437; Cass v. Dillon, 2 Ohio St., 607; Raudebaugh v. Shelley, 6 Ohio St., 308; Commissioners v. Board of Public Works, 39 Ohio St., 628; Eggleston v. Harrison, 61 Ohio St., *260 397; The United States v. Sixty-seven Packages of Dry Goods, 17 How., 85.
It is to be especially noted that two of the features of article XVII are manifestly temporary only in operation: that in respect to the power of the general assembly to extend terms of office, and that which provides that elective officers holding office when the amendment is adopted shall continue to hold until their successors are elected and qualified; while that which provides for filling vacancies in elective state offices by appointment by the governor until a successor is elected and qualified, appears to be equally temporary, and intended to apply only to vacancies in such offices occurring with respect to those then in office. It is apparent, also, that the provisions of the amendment having permanent operation apply to the office; those applying to the persons then in office are temporary in. their operation and will be satisfied when the terms then existing shall expire. All which tends to show that, aside from the main purpose herein-before stated, the intent of the amendment was to provide only for contingencies necessarily resulting from the changes as to the times of holding elections and changes in terms of office; and these provisions are inconsistent with the claim that, by any fair construction, they should be held to abrogate or impair the force of section 13 of article IV, which is a permanent provision and a special one applying to judges. Section 3 of the amendment applies to those holding office when it was adopted;'section 2, as to vacancies, applies generally; but, as before indicated, section 13 of article IV applies to judges only. The last clause of section 2, article XVII, respecting vacancies, is not of special significance as applied *261 to the case in hand. Certainly it is not in conflict with previous provisions. Judges of the circuit court are in the amendment classed with state officers. Hence that office does not belong with those classed as “other elective offices.”
This view is strengthened and we think made conclusive by a consideration of the policy respecting vacancies in office, and the filling of the same, manifested by legislation' and the trend of judicial decision since the adoption of the present constitution. The policy has been to secure continuity of service and avoid unnecessary vacancies. It has never been the policy of the state to create vacancies in office for the mere purpose of giving somebody an opportunity to fill' them. Piling vacancy upon • vacancy is an anomaly. This anomaly would be present if the relator’s contention should be sustained. No stronger demonstration of this policy, -respecting the judiciary could be shown than is given ■ by the constitution of 1851 in direct terms in the section (13 of article IV) hereinbefore quoted. If a vacancy occurs in the office of any judge, it shall be filled by appointment by the governor until a successor is elected and qualified; and such successor shall be elected for the unexpired term, at the first annual election occurring more than thirty days after the vacancy shall have happened. Two ideas are prominent. One that filie office of judge is an elective office, an office that is to be filled by the people. It is not an appointive office to be filled by any other authority save to the extent necessary to prevent a lapse. If the ■vacancy occurs thirty days or less before the proper election then the. governor ■ may make an appointment to' serve until the people elect at the first proper election for that office, and this for *262 the manifest reason that there would not be time to provide for notice, etc., necessary for the holding of an election by the people before the time fixed by law for the immediate succeeding election. But if the vacancy shall have happened more than thirty days before the election is to be held then the governor may appoint but only until the people have opportunity to exercise their manifest right to elect a judge.
This was followed by legislation, now sections 8 and 11 of the Revised Statutes, appearing as early as the revision of 1880, providing that any person holding an office of public trust shall continue therein until his successor is elected or appointed and qualified unless it is otherwise provided in the constitution or laws. And when an elective office becomes vacant, and is filled by appointment, such appointee shall hold the office until his successor is elected and qualified, and such successor shall be elected at the first proper - election that is held more than thirty days after the occurrence of the vacancy. The policy to discourage the needless creation A vacancies is recognized in a number of decisions of this court. As instance The State, ex rel., v. Howe, 25 Ohio St., 588, where it is held by Mcllvaine, J., that the general assembly may provide against the recurrence of vacancies by authorizing incumbents to hold over their terms in cases where the duration of their terms is not fixed and limited by the constitution, and that from this it results that the evils contemplated as likely to result from vacancies in office are guarded against by confining the exercise of the power to fill vacancies to those cases where no one is authorized by law to discharge the public duties; which, we think, is the constitutional scope of that power. *263 Also, by the case of The State, ex rel., v. Bryson, 44 Ohio St., 457, where it is observed that the office (that of fire engineer) could not be regarded as vacant while filled by one lawfully entitled to it, nor could an appointment made ostensibly to fill a vacancy create one. Also, in The State, ex rel., v. McCracken, 51 Ohio St., 123, where, at page 129, it is observed that: “The recognized policy of the state is to avoid, if practicable, the. creation of a vacancy in an elective office, and where the right to hold over is given in language that is not limited, and the same is not otherwise qualified, a court would hardly be justified in seeking for an unnatural construction by which a limit would be placed upon the right. In contemplation of law there can be no vacancy in an office so long as there is a person in possession of the office legally qualified to perform the duties.” Other judicial utterances of like import could be cited but it cannot be necessary.
Coming now nearer to the actual case in hand. For a clearer understanding it may be briefly restated. Judge Jerome B. Burrows was elected as one of the judges of the circuit court of the seventh circuit at the November election of the year 1902, for the term of six years, such term, (as then provided bv statute), to begin February 9, 1903, and to end February 8, 1909. By the third section of the amendment to the constitution adopted November 7, 1905, he being an elective officer then holding office, was empowered to continue to hold the office not only for the full term to which he had been elected but until his successor should be elected and qualified. At the November election, 1908, Judge Elias E. Roberts was elected to. succeed Judge Burrows, and had *264 he lived would have entered on the duties February 9, 1909. But, without having qualified, Judge Roberts died on the twenty-second November, 1908. The potential capacity to hold over on the part of Judge Burrows then (the constitution and statutes becoming operative upon the incident of Judge. Roberts’ death), became an actuality, an accomplished fact, the effect of which was to extend Judge Burrows’ term to all' intents and purposes as completely as would have been the case had he originally been elected for such extended term, or as it would have been extended, had the general assembly, .acting under constitutional warr'ant, made provision by statute for its extension. It was not the decease of Judge Roberts which worked the extension but rather the provisions of the constitution operating upon the incident of Judge Roberts’ decease. This then was the title to the office of circuit judge held by Judge Burrows. On December 31, 1908, Judge Burrows, not desiring to serve longer, resigned, to take effect January 8, 1909. A successor was thereupon appointed, became qualified, and entered upon the duties January 9, 1909. What did Judge Burrows resign? There was no qualification to his resignation, if indeed there could have been. . We are of opinion that he resigned the entire authority which as a judge he possessed. That embraced as well the authority to hold over until a successor should • be elected and qualified as the remaining portion of -the. six years, the extent of his term as originally conferred. Using the language of Williams,. J., in The State, ex rel., v. Wright, 56 Ohio St., 540, speaking of the office of mayor: “His right to serve after the expiration of the designated period, until, the qualification of his successor, being conferred by *265 ■statute at the time of his election, is no less a part of his statutory term of office than is the fixed period itself; and while he is so serving there can be no vacancy in the office in any proper sense of the term, for there is an actual incumbent of the office legally entitled to hold the same,” citing The State v. Howe, supra. In Kimberlain v. The State, 14 L. R. A. (Ind.), 858, it is held that: “The period between the expiration of his term and the qualification of his successor is as much, a part of the incumbent’s term of office as the fixed statutory period, where the law provides that he shall hold over until his successor qualifies.” See, also, Mechem on Public Offices, here and there.
We should not allow ourselves to become contused by the use of forms of expression. It seems to be assumed that a vacancy must necessarily have been created by the decease of Judge Roberts, taking- effect February 9, 1909, because the süccessor to be elected will be chosen for an unexpired term and there cannot be an unexpired term without a vacancy in the term of which it is a part; hence there was a vacancy in Judge Roberts’ term. With due respect we wish to urge that Judge Roberts had no term. His untimely death prevented such result. On the other hand his decease, as hereinbefore indicated, was the incident on which the constitution, supplemented by the appointment of the respondent, acted in a way to prevent a vacancy. An unexpired term is not synonymous with a vacancy. The former is the remainder of a period prescribed by law after a portion of such time has passed; a vacancy exists where there is no person lawfully authorized to assume and exercise at present the duties of the office. And if pro *266 vision, either by constitution or statute, has been made for preventing a vacancy, it is a misuse of terms to assume that a vacancy has occurred. If, therefore, at the expiration of the six years for which Judge Burrows was elected, a person qualified to hold it was in possession of the office, no vacancy existed. It is distinctly held in Kimberlain v. The State, supra, that: “The death of a person elected to an office before he qualifies does not create a vacancy where the constitution provides that the incumbent shall hold office for his term and until the election and qualification of his successor.” In The People, ex rel., v. Lord, 9 Mich., 227, a judge was elected November, _, 1860, the term to begin January 1, 1861, but before that date, viz: November 22, 1860, died, and an appointment was forthwith made by the governor to fill the vacancy, and subsequently, viz: January 1, 1861, the governor appointed another person to fill what he supposed was a vacancy. It was held that the second appointment was void, and that under the constitution (the provision being similar to ours) the person first appointed would hold until a successor was elected and qualified. It is held in Commonwealth, ex rel., v. Hanley, 9 Pa. St., 513, that: “The death of the person elected to fill the" office of clerk of the orphan’s court, before he has qualified himself according to law, does not create a vacancy, but the incumbent who is authorized to hold the office until his successor shall be qualified, holds over.” And Rogers, J., in the opinion observes: “It will be observed that the terms on' which alone the governor can appoint are a vacancy in the office, and that there can be a vacancy in an office when there is a person in possession whom all acknowledge to' be *267 rightfully in possession, having a perfect right to exercise all the powers and duties of the office, and to receive and enjoy all its emoluments, is a position difficult to comprehend. It is an abuse of terms to say that at the time the governor issued his commission to the relator the office was vacant, for no person can plausibly deny that the respondent was the rightful possessor of the office at the time.” So here. It is conceded that the defendant was rightfully in the office at the time of the appointment of the relator unless his powers ceased with the expiration of the six year portion of the term of Judge Burrows. To sustain the claim that they did so cease would, we think, be to fly in the face of the weight of authority, and the manifest purpose of our constitution and statutes, which purpose, . as heretofore pointed out, is to secure continuity and steadiness of service and to discourage the creation of vacancies.
But, waiving that which precedes, we think the question can hardly be regarded as an open one in this state. The State, ex rel., v. Dahl, 55 Ohio St., 195, was a proceeding in mandamus to compel the board of elections of Fayette county to place the name of the relator on the official ballot as nominee of the Republican party as county auditor. One Nitterhouse was elected auditor at the November election, 1895, was afterwards duly commissioned by the governor but died September 30, 1896. His term, had he lived, would have commenced October 19, 1896. Assuming that the death created a vacancy at the time thereof, to be filled by election in November, the Republican committee nominated relator and requested the board of election to place his name on the official ballot, which re *268 ■quest- was refused. The question was, therefore, whether- the death of Nitter house created a vacancy. It was held that it did not. His term of office was not to begin until the 19th of October, following his death,- which was less than thirty days before the coming November election; that his death created no vacancy in the office as it was then filled by a duly elected, qualified and acting auditor who would continue to be such until tile end of his term, and as no vacancy could occur in the office by reason of the death of Nitter house the office could not be filled by election at the following November election. The action of the board of elections in refusing to put the name of the relator on the ticket as the Republican candidate was approved by this court, and the relator’s petition dismissed. The case of The State, ex rel., v. Speidel, 62 Ohio St., 156, was a quo warranto prosecuted in this court, involving title to the office of sheriff. It was charged that Speidel unlawfully holds the office of sheriff of Clermont county; that in 1897 one Buvinger was elected sheriff for the term beginning the first Monday of January, 1898, qualified and entered upon the duties; that at the annual election, November 7, 1899, he was a candidate for reelection; that one Cover and one Brown were also candidates; that Buvinger received 4369 votes, Cover 3802, and Brown 196; that Buvinger died on election day; that the death of Buvinger created a vacancy in the office and a vacancy on the Democratic ticket (he being the Democratic candidate and Cover being the Republican candidate); that the votes cast for Buvinger were of no effect in law: that Cover was elected to the office and entitled to the same 'from the first. Monday of January, 1900, until *269 the first Monday of January, 1902; that he was entitled to a certificate of election from the board of canvassers, but the board refused a certificate and declined to certify for said office at all; that one Walker was on the 9th November, 1899, appointed and commissioned to fill the vacancy occasioned by the death of Buvinger; that he qualified and entered upon the duties; that he still claims to have and hold the title to the office; that on the first Monday of January, 1900, the respondent Speidel was appointed to fill the vacancy by the commissioners of the county, and, pursuant to such appointment, was commissioned by the governor of Ohio, and on said day unlawfully intruded into the office and is unlawfully exercising the functions thereof, and that Cover claims to have been elected to succeed Walker. Judgment of ouster was prayed for against both Walker and Speidel, and for the induction of Cover. Speidel demurred to the petition, and Walker set up his claim by answer, insisting that he was entitled ■ to hold over until his successor should be elected and qualified. Judgment was given for Walker, who had been appointed, and against both Cover and Speidel, the court holding that: “When one who is holding the office of sheriff, and is a candidate for election to succeed himself, dies before entering upon his new term, a vacancy is thereby created in the term in which he is serving, but not in the term for which he was a candidate and upon which he had not entered; and one who is duly appointed and qualified to fill the vacancy thus created will hold the office for and during the unexpired term of his predecessor and until his successor is elected and qualified; and such election must be had at the first proper election that *270 is. held more than thirty days after the occurrence of the vacancy.” That is, the court held in favor of Walker, the appointee, Davis, J., remarking in the opinion that: “The death of Buvinger did not create a vacancy in his term which would have begun in January, 1900, assuming that he was duly elected, because he did not live to be installed in his second term. Walker was the incumbent at the time when that term would have begun had Buvinger lived, with the right to remain until his successor was elected and qualified. There could be no vacancy then. * * * Therefore the county commissioners, in appointing Speidel, acted altogether without authority.”
The State, ex rel. Adams, v. Hopkins, 10 Ohio St., 509, is cited as supporting relator’s claim. We think the case fails to do so. The respondent Hopkins was serving on his second term as county treasurer, having first been elected in 1855. At the election in October 1859 one Rapp was elected treasurer. On November 27 following Rapp died. A commission had issued but he had not received it. On the first Tuesday of September, 1860, (the date when the new term would begin), Rapp having failed to qualify, the county commissioners appointed Adams, the relator, and the governor issued to him a commission. Having in all resnects qualified Adams demanded the office but Hopkins refused possession, claiming that he had the right to hold over. The court sustained the claim of Adams, holding that, within the meaning of the statute, the death of Rapp created a vacancy. Two reasons justified this conclusion. One that the statute then in. force applying especially to treasurers, in terms provided that under such circumstances “the office shall become vacant.” The *271 other that Hopkins was ineligible to further serve as treasurer at that time because of the constitutional provision governing that office and limiting the capacity of one elected treasurer to serve only four years in any period of six years.
It follows, and as conclusion we hold, that section 13 of article IV of the constitution is still in force, and that it controls this case; that the death of Judge Roberts did not create a vacancy in the office of circuit judge; that the period between the end of the six years for which Judge Burrows had been elected and the election and qualification of a successor (November 1910), became a part of Judge Burrows’ term; that the resignation of Judge, Burrows carried with it the balance of his entire term, including the interim above referred to; that Judge Metcalfe, by reason of his appointment and qualification, succeeded to all that Judge Burrows resigned, and was thus clothed with the power to hold the office until a successor should be elected and qualified, and that the appointment of relator to take effect February 9, 1909, was ineffective to give any title to the office. We desire to emphasize that the crucial question at issue is not whether or no, as a general proposition, by force of our constitution and laws, a judge holds over until his successor is elected and qualified. But the question is what is the effect of an appointment to fill a vacancy? We think, for the reasons heretofore given, the effect distinctly prescribed by section 13 of article IV, viz: to clothe the appointee with the power to hold until a successor is elected and qualified, affords the answer. If this is so then the relator can have no possible standing to demand the office.
*272 The demurrer to the petition will be sustained, and the- petition dismissed.

Dismissed.

Crew/ C. J;, Davis, Sitauck and Price, JJ., concur. .