Donahue, J.,
dissenting. The constitution of Ohio of 1851 provided for the election of certain *229 officers and fixed their term of service. The same constitution also authorized the general assembly of Ohio to provide by law for the election of such county and township officers as may be necessary. Whether the clerk of the common pleas court is or is not a county officer is not important in the determination of the question presented in this case. The more important consideration is whether that office is a constitutional office and the term thereof a constitutional term, or is it a statutory office and a statutory term? Section 16 of Article IV of the Constitution created the office of the clerk of the common pleas court and fixed the term of that office at "three years, and until his successor shall be elected and qualified.” Section 1 of Article X conferred upon the general assembly of Ohio the authority to provide by law for the election of such county and township officers as may be necessary, and Section 2 of Article X authorized the general assembly to provide by law the term of such county officers at any number of years not exceeding three years.
For more than half a century the provisions of Section 16 of Article IV, creating the office of clerk of common pleas court and fixing the term thereof, and Section 2 of Article X, authorizing the general assembly of Ohio to fix the term of county officers, remained the organic law of this state, and the clerk of the common pleas court was elected and held his office for the term provided in Section 16 of Article IV of the Constitution. The general assembly had no authority whatever either to limit or increase that term, nor had it *230 ' any authority to create or abolish the of$ce. That was an office and term of office fixed by the constitution itself and with which the legislature of the ■ state had nothing to do.
Our attention is called to only one reported case in this state where it was ever seriously claimed by any one that the office of the clerk of common , pleas court came within the general provision, of . Section 2 of Article X, relating to county officers. That is the case of The State, ex rel., v. McCracken, 51 Ohio St., 123. This court'in that case “held that Section 2 of Article X had no application whatever to the clerk of the common pleas court, independent of the .question of whether he was a county officer or not, for. the reason that the "provision of Section 2 of Article X is a general provision relating to county officers in general, while Section 16 of Article IV is a special próvision with reference to the clerk of the' court of ' common pleas. Spear, J., in discussing this question in that case used this language: ■’ “In support of the claim of Berwick A. Barton, it is contended ■ that the effect of the statute of March 2, 1893, is '■■to create a vacancy in the office of clerk, because such clerk is a county officer, and Section 2, of Article X, of the Constitution provides that ‘county officers shall hold their office for such term, not exceeding three years, as may be provided by law.’
“It is, we think, a sufficient answer to this proposition to say that the purpose of the framers of the ' constitution, by the adoption of Section 16, of Ar- ' tide IV, to take the office qf clerk of the court out of the operation of the terms of Section 2; of *231 Article X, is so plain as to be practically beyond question. One is a general provision; the other a special one. In such case the-latter controls.” It would appear that this proposition, so clearly stated by Judge Spear, is unanswerable, and that so long as the special provision remains a general provision will not control. The case of The State, ex rel., v. McCracken, supra, was cited with approval in the later case of The State, ex rel., v. Thrall, 59 Ohio St., 368. Shauck, J., in discussing the former' case, uses this language: “The effect of this section [Section 16, Article IV, Constitution of 1851] was distinctly held to be to take the office of clerk out' of the operation of other provisions of the con- • stit'ution which might otherwise have been controlling.” ' 1
•At the time the amendment to the constitution' known as Article XVII was adopted, this special provisión of the constitution, relating to the office of clerk of common pleas court, had been in force over fifty years and the highest court in the state had'twice declared that this section of the constitution created this office and fixed the term, notwithstanding Section 2 of Article X in general terms authorized the general assembly of Ohio • to fix the term of office of all county officers. ■ The provision of this amendment authorizing the general assembly to fix the term of office of all “elective county * * * officers” for an even number of years not exceeding four years is no broader, no ; more comprehensive, than Section 2 of Article X. The original section used the term “county officers,” while the language of the amendment is *232 “elective county officers,” but it is provided in Section 1 of Article X that all county officers shall be elective officers. Therefore, the term “county officers” and “elective county officers” are synonymous within the meaning of the constitution of the state.
The framers of this amendment to the constitution and the electors voting for its adoption must be presumed to have known not only the provisions of the constitution of 1851 but also the construction given these two provisions by the supreme court of the state. Therefore, if it were the purpose to repeal the special provision language clearly indicating that intention would have been used. The fact that this special provision of the constitution had obtained for so many years, and the further fact that this court had held that this special provision of the constitution exempted this office from the general provisions of Section 2 of Article X, is practically an unanswerable argument that it was not intended that another general provision in identical or at least substantially the same language would be given a different construction. .Nor could the correctness of the construction of these constitutional provisions by this court have been questioned, for there is absolutely no authority to the contrary. The United States courts and the courts of all the states of the Union have uniformly held that special provisions of a constitution or a law always obtain as against general provisions. If this general provision were intended to have the effect of repealing the special provision then the only possible excuse for not specifically *233 mentioning this office in the amendment itself would be that it was overlooked or forgotten by its framers and the electors who voted for it.
There is another consideration, however, that would seem to be decisive of this question. The amendment (Article XVII) does not in terms repeal Section 16 of Article IV of the Constitution of 1851. If that section is repealed by this amendment it must be by implication. Spear, J., in the case of The State, ex rel., v. Metcalfe, 80 Ohio St., 244, 259, expresses a familiar doctrine in this very clear language: “Repeals by implication are not favored with respect to statutes, and for a stronger reason they should not be favored with respect to constitutional provisions. The repugnancy, to work a repeal, must be wholly irreconcilable, as the intention to repeal will not be presumed, nor the effect of the repeal admitted, unless the inconsistency is unavoidable. The State, ex rel., v. Dudley, 1 Ohio St., 437; Cass v. Dillon, 2 Ohio St., 607; Raudebaugh v. Shelley, 6 Ohio St., 308; Commissioners v. Board of Public Works, 39 Ohio St., 628; Eggleston v. Harrison, 61 Ohio St., 397; The United States v. Sixty-seven Packages of Dry Goods, 17 How., 85.”
The provisions of Article XVII are no more in conflict, no more repugnant, to the provisions of Section 16 of Article IV than were the provisions of Section 2 Article X of the Constitution of 1851, yet these two provisions of the constitution of 1851 were held to be consistent, and the correctness of this holding is not even challenged.
In view of the doctrine announced in The State, *234 ex rel., v. McCracken, supra, which is undoubtedly the law of not only this state but-of every other state in the Union, there can be no such-conflict or repugnancy between a special provision and a general provision in the constitution that would require a court to hold that the special provision is repealed by implication, for in such case the special provision excepts that particular subject or matter from the operation of the general provision the same as if the special provision were -written into the general provision as an exception thereto. In such case it would not be claimed that exceptions written into a general provision would be repugnant to the general provision. The application of this doctrine to this case requires that the general provisions of Section 2 of Article XVII of • the Constitution must be read the same as if'the special provision of Section 16 of Article IV were written into it as a part thereof, as an exception to, the general provisions of that section.
It is true that Section 1 of this amendment provides that “Elections for state and county officers •shall be held on the-first Tuesday after the. first Monday in November in.-the even numbered-years; and all elections for all other- elective- officers shall be held, on the first Tuesday after the first Monday in November in the odd numbered years.” .-This, of course, is not possible if the term of- the office of clerk is still three years as specifically provided in Section 16, Article IV, and it is the clear, duty, of this court to give effect to Section! of Article XVII if possible, but that can not be done upon the- theory that there is a difference in the meaning of the *235 term “county officers” as found in Section 2, Article X, and the term “elective county officers” as found in Section 2 of Article XVII. Neither can it be successfully maintained that general provisions either in the same constitution or in any amendment to it will repeal by implication a special provision as to any subject-matter covered by the special provision,' ,so that both of these theories must be abandoned. . It is the. duty of courts to interpret constitutions according to. well-known canons of. construction and in conformity to the settled law of the state except in so far as the constitution itself departs therefrom. Courts can not make constitutions. Neither, can.they supplement them, notwithstanding ■ that it may reasonably appear that, the amen dip ent has .not fully accomplished the result intended to be accomplished. In such .case there is only one remedy, and that is recourse to the people. Any other doctrine or any assumption of power by the courts, while it might, in a given case, result in advantage to the state, would eventually prove disastrous. If this amendment affects the special provision of the constitution in relation to the term of- office of the clerk of the court of common pleas w;e must find some other provision of the amendment: aside from the general provision as to “elective county officers” justifying such construction.
■ Section 2 of this amendment provides that the general assembly shall have power to extend existing terms of office so as to effect the purpose of section 1 of this article. It is claimed that this provision applies only to the existing terms of officers then in office, but that is not the language used. *236 “Existing terms of officers” is one thing; “existing terms of office” is another, and while ordinarily they might be used interchangeably, yet in the framing of a constitution great care should be used and undoubtedly is used in the selection of language that will convey the exact meaning intended.
This provision of the amendment has been construed by this court in the case of The State, ex rel., v. Pattison, 73 Ohio St., 305. At page 328 the court, in its opinion, says: “The phrase ‘existing terms of office’ means the terms of office as defined in the constitution and the acts of the general assembly as existing at the time of the proposal and adoption of the amendment. It could not refer only, to the terms of those actually holding office at the time of the adoption of the amendment. Those were provided for by Section 3 of the amendment.” This proposition, so clearly stated in the opinion, is carried into the third paragraph of the syllabus of that case, part of which is as follows: “The phrase ‘existing terms of office’ means the terms of office as defined in the constitution and acts of the general assembly as they existed at the time of the proposal of the amendment and of its adoption.”
Section 3 of this amendment does provide that every elective officer holding office when this amendment is adopted, shall continue to hold such office for the full term for which he was elected, and until his successor is elected and qualified as provided by law. So that there was absolutely no necessity for any provision in the constitution authorizing the general assembly to extend existing terms *237 of officers, but it now clearly appears that there was great necessity for authorizing the general assembly to extend existing terms of office, at least in the particular case of the office of clerk of common pleas court, so as to effect the purpose of Section 1 of Article XVII. Section 3 of this amendment was self-executing. It did not depend upon any act of the legislature in order to become effective, but existing terms of office did require legislative action in order to effect the purposes declared in Section 1 of the amendment. The extension of the term of the clerk of common pleas court to four years would have literally complied with the power given and would have effected the purpose of the amendment as stated in Section 1 of Article XVII.
This limitation upon the authority of the legislature to change existing terms of office could apply only to constitutional offices and constitutional terms, and not to offices created by the legislature or terms fixed by the legislature itself, for as to these terms the constitution conferred full power upon the legislature to fix the term within certain limitations of time. Nor would it apply to the constitutional offices where the constitution specifically authorized the legislature to fix the term. This construction may not be free from doubt, yet it is in line with the former constructions given this section by this court, and it does effect the purposes of Section 1 of Article XVII. There is no other possible construction of this amendment that will effect such purpose or that will authorize the legislature of the state to ctano-e existing terms of office specifically provided by the constitution itself.