Mr.. Justice
 

 the opinion of the court.
 

 This is a writ of error to the judgment of the Circuit Court of the eastern district of Pennsylvania, affirming the judgment of the District Court founded upon an information
 
 in re?n
 
 against certain cases of cloths and cassimeres seized on land in the said district. The cause' was tried by a jury, who retúrned a verdict for- the United • States, upon which the judgment was rendered.
 

 ' ■ The information contained thirteen counts.. The first and second counts were founded on the 50th section of the Duty-Collection Act of 1799,-chap. 128; the third count was founded on the ,68th sec
 
 *205
 
 tion of the same act; .the fourth, fifth, and tenth counts were found- • ed on the 66th section of the same act; the sixth,' seventh, eighth, eleventh, and twelfth counts were founded on the 4th section of the act of the 28th of May, 1830, chap. 147; and the ninth and .thirteenth counts were founded on the 14th section of the act of the 14th of July, 1832, chap. 224. The claimants put in a plea or ' answer denying the allegations in the information, upon which an issue was tendered and joined, and tried by the jury. ■
 

 At the trial, certain exceptions were taken to the matters ruled, and to the charge given by the learned judge who presided at the trial, the form and frame of which exceptions, as propounded by the counsel, we do not propose to examine; and the questions submitted to us arise from the matters of law thus ruled and contained in his charge. With the comments of the learned judge upon the' evidence, except so far as they involved matters of- law, we have nothing to do, as they were submitted solely for the consideration of the jury in weighing .the evidence, of which they were the proper and final judges. .
 

 In the course of the argument in this court, an objection was insisted on, that the seizure itself upon which the information is founded, was irregularly and improperly made, it having.been made-by, the collector of the customs of die port of Philadelphia, when it should have been made by the collector of the customs of the port of New York. And some-reliance in support of this objection seems to have been placed upon the supposed intention of the 68th section of the Duty-Collection Act of 1799, chap. Í28. 'But if any reliance could be placed thereon, vas we think it could not,) it would be completely removed ■by'dhe 70th section of the same act, which makes it the duty of the several officers of the customs to make seizure of all vessels and goods liable to seizure by virtue of that act or any other, act respecting the revenue, as, well without as within their respective districts. So that it is plain from this provision that a seizure made by any officer of the customs of any district would be good, although made within any other district. And the whole structure of the act shows that any officer of the customs had a perfect right to seize goods found in his own district, and indeed that it was his appropriate duty. 0
 

 But the objection itself has no just foundation in law.. At the common law any person may, at his peril, seize for a forfeiture to the government, and, if the government adopts his seizure, and institutes proceedings to enforce the forfeiture, and the. property is condemned, he will be completely justified. So that it is wholly-immaterial in such a casé who makes the seizure, or whether it is irrégularly made or not, or whether the cause assigned originally • for the seizure be that for which the condemnation3fakes place, provided the adjudication is for a sufficient cause. Tjiis doctrine was fully recognised by this court in Hoyt h. Gelston, 3 Wheat. 247,
 
 *206
 
 310, and in Wood v. United States, 16 Peters, 342, 358, 359. And from these decisions we feel not the slightest inclination to depart.
 

 Indeed, if the objection could under any circumstances be maintainable, it was matter that shbuld have been propounded as prelh minary matter in the nature of a plea in abatement of the information, and could constitute no point before the jury upon pleadings addressed to the merits of the case, and involving the direct question of forfeiture or not.
 

 In the course of the trial several objections to the competency of certain witnesses, and to the admissibility of certain evidence, oilered on behalf of the United States, were taken by the claimants. '-In the first place an objection was taken to the competency of John J. Logue, George Gideori, and William Cairns, called to-,support the issue on behalf-of the United States, they being officers of the customs and the person's who niade the seizure of the goods in controversy. By-the 71-st section of íhé Duty-Collection Act.of 1799, chap. 128, the
 
 onus probandi
 
 to ' establish- the innocence of the property is thrown upon the claimant in all cases where probable cause is ■shown for the seizure and prosecution: And by the 89th section of the same act it is provided, that when in-any prosecution on-account of a seizure judgment shall be given for the claimant, if it shall appear to the court before whom such prosecution shall be tried, that there was a reasonable cause of seizure, the court shall cause a. certificate and entry to be made thereof; and in such case the pereon making the seizure, or the prosecutor, shall not be liable to any action, suit, Or judgment, on account of such seizure and prosecution. The argument, therefore, on behalf of the claimant is, that these witnesses are incompetent, they being interested in the event of the suit, and being liable to an action at the suit of the claimants, if reasonable cause for the seizure, was not established, -and that their testimony in effect would conduce to establish such reasonable cause.
 

 Several answers may be given to.this objection. In the first place, it is npt true, that the mere liability of a party to an action in one •event of a suitwill constitute of itself an absolute or universal objection to his competency. There are many exceptions to the rule on this subject, founded upon necessity, or public policy, or the remoteness, the uncertainty, or the contingent nature of the liability. The present case falls directly within these exceptions. The witnesses were acting as the agents of the government in making the search "and seizure; they alone could give testimony as to the facts attending .such search and seizure, and were, therefore, witnesses from necessity ;• and .their' acts being adopted or authorized by the government, public .policy requires that the- government should have the means of enforcing-its own rights through the instrumentality of their, testimony. Their competency for such purposes falls directly within the reasoning of the Court of King’s Bench in the case of The King
 
 v.
 
 Williams, 9 Barn. & Cres. 549, and the case of United States
 
 v.
 
 
 *207
 
 Murphy, 16 Peters, 203, where the subject was considered very much at large.
 

 - In the next place, the witnesses'were- not objectionable in point of competency ore account of any interest in the event of* the cause. -Their interest, if any they had, as informers or otherwise, in the for- - feiture, was completely removed by the provision of the 91st section of the Duty-Collection Act of 1799, chap. .128, which, when they are. Used as witnesses,- takes away from them the; share of the forfeiture to which they would otherwise be entitled. . In the event of .the suit, therefore, they had no interest, for the suit was solely to enforce, the forfeiture. The question,'whether thefe was .probable Or reasonable cause for-the. seizure, constituted nopurt.of thq- issue to be tried by the juiy. . So far ¡as .it respected throwing .the
 
 onus- probandi.
 
 upon the claimants, it .Was, a matter solely .for the consideration of the court .in the progress' of. theJ trial, and .collateral to the main inquiry, although of ..great importance in regulating the nature -and extent and sufficiency of the. evidence; And so far as respected the certificate and entry of. reasonable , cause to protect the' seizors from future .liability, for .the seizure,-it 'was-no part of the issue, and, indeed, was an /act to be„. .done, by the' court before whom the prosecution was tried, .only in case judgment upon the verdict should pass for the claimants; and it,.therefore, was plainly an act to be done and inquiry, to be had posterior to the trial. •
 

 '• In the-next place, the objection taken was to the competency of the witnesses, as.such,- for a’ny purposes in the- cause. They were not called by the government as witnesses- to give .evidence of matters showing reasonable or probable cause for the seizure, but as' witnesses generally
 
 “to
 
 support the issue on the part” of the government. . If competent for any-purpose úpon the'trial, th§y could not be- rejected generally; ■ and that .they were competent, to provethe faqts attending the Seizure of the goods, and that certain original marks' on packages containing the said goods had been erased, and Song'them .the mark [B]F, which was originally upon one of the 1 packages,” cannot, in our judgment, admit of any just doubt. It could, make no difference as to their, admissibility for these, purposes, that", collaterally these- facts might bear upon the question' of probable or Reasonable cause or not.
 

 In the next place, .there -was another and independent .ground upon which their competency is clear. Jt is, that they were acting under a search-warrant in making the search arid seizure; which would undoubtedly, Under the 68th section of the same act, be a complete protection to them against all liability to any Suit therefor, unless, indeed in. a.-case where the witnesses acted from malice, and also without probable cause; and the absence of either would exonerate them from all liability. So that in -this view their1 liability was remote, contingent, and uncertain;
 

 
 *208
 
 Upon all these grounds we are.of opinion, that the witnesses were clearly admissible.
 

 Another objection was to the' admissibility of a bill of lading, entry, and owner’s oath, taken on the 16th- of July, 1839, in the mpnth preceding the seizure of . the goods-in question,‘of nineteen cases of goods (not part of the goods seized) marked [B]F, 1
 
 a
 
 19. Á1-. though this' evidence was objected to, and it. was.' admitted,, yet' it does not appear upon the record, that any' exception was taken to the ruling. .But) without dwelling upon this, which was perhaps an accidental omission, it is proper to say, that this evidence was not offered as a single, isolated document, (for in -that view it might be .deemed at most as irrelevant and inconsequential for any purpose j) but it was offered in connection with other documents and evidence to establish a privity between Taylor and Blackburne & Co. in other importations of a kindred character, and under' a scheme of meditated fraud upon the revenue of the United States, of which these documents were a link in the chain. ■ For.this purpose they might be important and necessary;' and although the whole evidence'^ not set forth in the record, yet it is apparent, from what, is there found in reference to the next objection, that the evidence had an. intimate connection and bearing upon that which is there stated..
 

 ' The objection here alluded to- is in the record stated in the following words: “ The counsel of the United States'” — [see the paragraph in the statement of the Reporter which is included within bracket's.] Ncjw, we think the exception to- this evidence was properly overruled, and the evidence admissible to establish-the connection^between Taylor and. Blackburne’in other importations as well as in the importation of the goods.now in controversy, and also to displace any-presumption that the acts -of the' one;were not properly to be deemed attributable to any connivance with. the other, or that ihey 1 were pot jointly interested in th'e-same scheme of importations, and mutually cognisant of the designs of each other:. What, effect this evidence; ought to have after its admission- irt- the cause, taken in connection with the 'othef' evidence, was a matter.for the consideration of the'jury alone.; but' of its admissibility for the purposes above ■ stated we- -entertain; no- doubt.'-"It is, indeed, a. strange omission in the. record, that .the other evidence .in the 'case is riot therein fully stated, nor the-points, to which'it was adduced, suggested, so that we are left to conjecture from very imperfect materials what was die .true extent and bearing of the.various' matters excepted to as improper evidence.
 

 .Another objection .is to a question put to Abraham- J. Lewis, a -Witness on.behalf of the United-States, who, having'stated that his firm wére. importers of cloths, and kerseymere's, and that he had thereby a knowledge of their' quality, -was asked, ,on' cross-examination, ■to state the extent of the importations of his firm; and in-reply he said,- “Formerly we imported-large quantitities of woollens; for
 
 *209
 
 three or four years past we have imported but a few packages1 annually.” Whereupon the counsel for the United States, on re-examination, proposed the following question, viz.: “Was there any thing in the state of the market, which caused the .alteration which you have mentioned in the amount imported by you within four or five years last past?” to which question the claimants objected;' but the judge allowed the- question to be put, saying it might have some bearing on the case, and that it was .but following out the question put on the cross-examination. We think the’ decision of the court was perfectly correct, for the reason stated by the judge. The answer might show that the witness had ceased to import so largely, ■not from want, of skill or capital, but for reasons Which might connect themselves with the importations of the' claimants. What the answer was we do hot know; and certainly it could be ho just ground of exception, that the answer was such as had ho bearing either way upon die merits of the case, and
 
 a fortiori
 
 not, if favourable to the claimants.
 

 Another objection was to thé'admissibility of the evidence of David Gardner, who was offered to prove that certain goods, marked [B]F, which had been imported into New York,-in. the ship Eutaw, being the same, on which Francis Blackburne was alleged to have ■paid the freight, were still in the custom-house at New York. We think that this evidence was properly admissible, for the same reasons as those which have been already stated. It was a part of the
 
 res gestee.
 
 If. the other parts, of'the evidence were favourable to the innocence of the claimants in their various importations, then no conclusion against them could fairly be drawn from this fact. But if, .on the other hand, strong circumstances of suspicion of fraud attached to other importations, then the circumstance, so contrary .to-the usual course of mercantile transactions in cases of perishable articles, or. articles liable to depreciation or decay, of their remaining long in the custom-house, might fairly be deemed to inflame those suspicions, especially if in the.interval the government was on the alert to detect supposed frauds in-other importations.
 

 . Another objection was to the admission of the evidence of.an invoice of merinpes, (riot part of the goods mentioned in the information,) entered in Philadelphia, by Blackburne & Co., and marked [B]F, 35 to 53, offered as strengthening the evidence of the ownership of packages with this . mark. In this view-we can perceive no posable question as to the competency or propriety of tire evidence.
 

 Another objection was to the admissibility in evidence of certain invoices of Blackburne, Taylor, Okie & Robinson, to show the ab-. sence of ) any such., usage as to the allowance of five per cent, for measurement, as had been testified to by the witnesses on the part of the claimants. We see no just ground of exception to the admissibility. of such evidence. The set was of a
 
 *210
 
 nature, and', all' evidence .which went to establish the want of such generality, by proof of the non-existence of such a deduction in in* voices of a similar nature: — where, if it was general tand well known, it ought to be found — was ■ certainly admissible to rebut the .presumptions derived from the adyerse proof. The same answer may' be given, and indeed applies more forcibly, to the evidence given by Robert Walker, a witness for the claimants, who, upon his cross-examination, verified several invoices of his own importations, into the port of New York; and also a letter of one Waite, annexed to-one of the invoices. ' The introduction of this letter was objected to; but it was an accompaniment of the invoice , introduced without objection, and it was offered not in chief, but as qualifying and repelling the evidence offered by. the claimants as to the five per cent, usage" — founded, among that of'others, upon the very testimony of Walker. The other invoices verified by Walker were, for the sanie reason, in our judgment, equally admissible.
 

 We have thus gone over the various objections taken to the. competency and admissibility of the testimony in this case;, some of which, considering all the circumstances of the case, can scarcely be treated otherwise than as being
 
 inter apices juris;
 
 and shall now proceed'to examine the exceptions taken to the charge of the court. Of many-of these it is unnecessary to-take any special notice, since they have been already disposed of in the case of Wood
 
 v.
 
 United States, 16 Peters, 342, or have incidentally fallen under notice- in the preceding parts of this opinion. ■ Upon the point that the re-ve- - nue laws, on which the information was founded, were not, as the judge in the. court below suggested, to be deemed penal laws in the ' sense in which that phrase is sometimes used, it may’-be- proper to say a very few words. He treated the point as not of great importance in the case, as we think it was- not, since it had no tendency to change the interpretation of the provisions of the revenue laws then under his consideration. In one sense, every law imposing a penalty'or forfeiture may be deemed a penal law; in another sense, such laws are often deemed, and truly deserve to be called, remedial. . The judge was therefore strictly accurate, when he stated that“It must not be.understood that every law which imposes a penalty is, therefore, legally speaking, a penal law, that is, a law winch is to be construed with great strictness in favour'.of the -defendant. Laws enacted -for tibe-prevention of .fraud, - for the suppression of a public wrong, or to effect a public- good, are not, in- the strict sense, penal acts, although they may inflict a penalty for violating them.” And he added, “It is in this light I view the revenue laws, and I Would construe them so as most effectually to accomplish the intention of the legislature in passing them.” . The same distinction will be found recognised in the elementary writers, as,- for example,, in Blackstone’s Commentaries, (1 Black. Comm. 88;) and Bacon’s Abridgment, (statute I. 7, 8;) and Comyns’ Digest, (Parliament R.
 
 *211
 
 13, R. 19, R. 20;) and it is also abundantly supported by the authorities. .
 

 The main exception however to the charge is as to the ruling of the judge that-there was probable cause of. seizure, and that, therefore, the
 
 onus probandi
 
 to establish the innocence of the importation, and to. repel the supposed forfeiture, was upon the claimants. We-entirely concur in the opinion of the judge, in his views of the evidence-, as applicable to this point. . He, and not the jury, was to judge whether there was probable cause or not to throw the
 
 onus probandi
 
 on the claimants; for the 71st section of the act of 1799, chap. 128; expressly declares that “the
 
 onus probandi
 
 shall lie on the claimant only where probable cause is shown for such prosecution, to be judged of by the court before whom such prosecution is to be had.” In our judgment, the circumstances were .abundantly sufficient to justify him, nay, to require him to throw the.owws
 
 probandi
 
 on the claimants.’ The extraordinary circumstances connected with the concealment of the goods, the prevarications and false statements ■ of Blackbume, and the undervaluation of the goods, all required the most plenary proofs on the part" of the claimants, to deliver the property from the perils ■ by which it was surrounded. The original cost of the purchases could-have been fully proved by the claimants, if the transactions were
 
 bona fide
 
 purchases; and they had the most ample.means within their power to establish it. Taylor and Black-burne were so completely mixed up in these transactions, as principals -and agents, or as joint principals, that, the acts of the one might most justly be attributed -to the other; and in fact they admit of ho reasonable separation as to design or privity of co-operation.
 

 There is but one other exception remaining, which requires any special notice. It is whether the 68th section of the act.of 1799, chap. 128, was intended to reach, or'does reach- cases where, by a false and fraudulent undervaluation, less than the amount of duties required by law has been paid, or whether it applies only to cases where no duties at all have been paid upon the goods. In our opinion, the section was- designed to apply equally to both cases. In the sense of that section all' goods' are forfeited on which, by fraud, all the duties, shall not have been paid, or secured to be paid, which are by law required to be paid or secured thereon.
 

 - Upon the whole, the judgment of the Circuit Court is affirmed.