## UNITED STATES v. SOUTHERN RY. CO.

### (Circuit Court, D. South Carolina. May 1, 1911.)

ANIMALS (§ 31*)—TRANSPORTATION OF LIVE STOCK—QUARANTINE—OFFENSES —LIABILITY.

    Act Cong. March 3, 1905, c. 1496, § 2, 33 Stat. 1264 (U. S. Comp. St. Supp. 1909, p. 1185), declares that no railroad company shall receive for transportation, or transport, from any quarantined state or territory into any other state, any cattle or other live stock, except as provided; and section 3 provides that the Secretary of Agriculture shall make and promulgate rules and regulations which shall permit and govern the inspection, disinfection, certification, treatment, handling and manner of delivery of live stock shipped from a quarantined state or territory into any other state or territory, etc. *Held*, that such act, though imposing a penalty for violation thereof, should be construed as a remedial statute, and that the phrase, "from any quarantined state," must be construed in connection with the succeeding words, "into any other state, etc.," so that, where cattle are consigned as a through shipment from a point in a quarantined area to a point in prohibited territory, each railroad participating in the transportation violates the act, and not merely the initial carrier, which transports the stock from the quarantined district.

    [Ed. Note.—For other cases, see Animals, Cent. Dig. § 81; Dec. Dig. § 31.*]

Indictment of the Southern Railway Company for violating Act Cong. March 3, 1905. On demurrer to indictment. Overruled.

Ernest F. Cochran, U. S. Atty.
Cothran, Dean & Cothran, for defendant.

BRAWLEY, District Judge. The question raised by this demurrer is important to all engaged in the raising of cattle, and as the conclusion reached by the court differs from that in the only two cases which have been reported, it is well to state the reasons for that conclusion. The question raised is stated in the demurrer as follows:

    "The act of March 3, 1905, which makes it unlawful for any railroad company to receive for transportation or transport from any quarantined state or territory, or from the quarantined portion of any such state or territory, into any other state or territory, any cattle or other live stock, except as therein provided, applies only to the initial carrier, which transports the

stock from the quarantined district, and the connecting carrier, which receives the stock in any state or territory for further transportation, is not subject to punishment thereunder."

This position is sustained in U. S. v. El Paso, etc., R. Co. (D. C.) 178 Fed. 846, in a case arising in the Western district of Texas, and U. S. v. Chicago, B. & Q. R. R. Co. (D. C.) 181 Fed. 882, arising in the Western district of Missouri. The indictment sets forth the establishment of a quarantine and the making and promulgation by the Secretary of Agriculture of certain rules and regulations in connection therewith, governing the interstate movement of cattle, giving notice thereof to the proper officers of the Southern Railway Company, and of the Nashville, Chattanooga & St. Louis Railway Company, and due publication of notice, as required by the act. These rules and regulations were promulgated March 27, 1909, and became effective on and after April 1, 1909, and are contained in what is designated as "Bureau of Animal Industry Order No. 158." These rules and regulations would be judicially noticed by the court. Caha v. U. S., 152 U. S. 212, 14 Sup. Ct. 513, 38 L. Ed. 415. But the indictment sets them forth substantially. It appears from the indictment that the entire state of Alabama was quarantined; that the rules and regulations prohibited cattle from being moved from any part of Alabama into certain counties in South Carolina, and particularly the county of Greenville, in the state of South Carolina. It further alleges that the Southern Railway Company was engaged in the carriage and transportation of freight received by it from a certain connecting carrier, to wit, the Nashville, Chattanooga & St. Louis Railway Company, and alleges that the Southern Railway Company unlawfully moved and transported, under conditions other than those prescribed by the Secretary of Agriculture, from New Market, in the state of Alabama, to Greenville, in the county of Greenville, in the state of South Carolina, 40 head of cattle, the same being a shipment consigned and shipped by R. D. Cowley and Luna & Co., consignors, from New Market, in the state of Alabama, to Pates & Allen, consignees, at Greenville, in the county of Greenville, in the state of South Carolina, which transportation was effected as follows: The Nashville, Chattanooga & St. Louis Railway Company received the said shipment of cattle at New Market, Ala., and transported said cattle to Atlanta, Ga., and there delivered the cattle to its connecting carrier, to wit, the Southern Railway Company, which then transported it from Atlanta, Ga., to Greenville, S. C., and there delivered the cattle to the consignees. The allegation of the indictment is that the shipment of said cattle was a through shipment from New Market, Ala., to Greenville, S. C.

The demurrer of the defendant is that the indictment only charges the defendant, the Southern Railway Company, with transporting the cattle from Atlanta, Ga., to Greenville, S. C. The pertinent sections of the act (Act March 3, 1905, c. 1496, 33 Stat. 1264 [U. S. Comp. St. Supp. 1909, p. 1185], are as follows:

"Sec. 2. That no railroad company. * * * shall receive for transportation, or transport, from any quarantined state or territory or the District of Columbia, or from any quarantined portion of any state, * * * into any

other state, any cattle or other live stock, except as hereinafter provided, nor shall any person, company or corporation deliver for such transportation to another railroad company, * * * any cattle or other live stock, except as hereinafter provided. * * *

"Sec. 3. That it shall be the duty of the Secretary of Agriculture, and he is hereby authorized and directed, when the public safety will permit, to make and promulgate rules and regulations which shall permit and govern the inspection, disinfection, certification, treatment, handling and manner of delivery and shipment of cattle or other live stock from a quarantined state or territory or the District of Columbia, or from the quarantined portion of any state or territory or the District of Columbia, into any other state or territory or the District of Columbia, and the Secretary of Agriculture shall give notice of such rules and regulations in the manner provided in section 2 of this act for the notice of establishment of quarantine.

"Sec. 4. That cattle and other live stock may be removed from a quarantined state * * * into any other state or territory * * * under and in compliance with the rules and regulations of the Secretary of Agriculture; * * * but it shall be unlawful to move, or allow to be moved, any cattle or other live stock from any quarantined state * * * into any other state * * * in manner or method or under conditions other than those prescribed by the Secretary of Agriculture."

The object which the legislative body sought to attain, and the evil which it was endeavoring to remedy, may always be considered, for the purpose of ascertaining its intention. United States v. 99 Diamonds, 139 Fed. 965, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185; Brown v. Duchesne Co., 60 U. S. 183, 194, 15 L. Ed. 595; Platt v. U. P. Ry. Co., 99 U. S. 48, 59, 25 L. Ed. 424; Durland v. United States, 161 U. S. 306, 313, 16 Sup. Ct. 508, 40 L. Ed. 709.

The purpose of the act of March 3, 1905, is to prevent the dissemination of contagious, infectious, or communicable diseases of live stock, by prohibiting the interstate transportation from infected areas. By section 2 of the act, the receiving for transportation is made an offense, and the actual transportation itself is made an offense. It is evident, therefore, that the Congress had in view that the act of transportation, as well as the act of receiving for transportation, should be subject to such regulations as the Secretary of Agriculture should prescribe. If a connecting carrier, which receives cattle under a continuous shipment, is not subject to these regulations, then the object that the Congress had in view may, as far as the connecting carrier is concerned, be defeated. In other words, the contention is that, although the Secretary may make regulations concerning this continuous shipment, the connecting carrier is not bound to observe them. Such a construction would defeat the purpose of the act. The construction placed upon the act in the two cases cited and relied upon, that, where the transportation is over several connecting roads, the railroad only whose tracks lie in the quarantined area, and which received the cattle therein, and transported them, interstate, into that territory, is liable, is too narrow. This contention is based upon the interpretation of the phrase, "from any quarantined state," etc., which would restrict the offense to the original movement of the cattle from a quarantined area of a state to another state. The phrase, "from any quarantined state," must be taken in connection with the succeeding words," into any other state," etc., and both must be construed in aid of the remedial purpose of the act. To constitute the offense of transportation.

under this act, the transportation must not only be "from" a quarantined territory, but it must be "into" prohibited territory. The act of transportation is a continuous one, and, where there is a through shipment, each successive carrier which takes up and transports the cattle towards its final destination in the prohibited territory is engaged in transporting, and is therefore amenable to the act.

The argument of the defendant is that the Southern Railway Company is not liable, because it did not transport the cattle from Alabama. If this argument is sound, then it might be contended that the Nashville, Chattanooga & St. Louis Railway Company would not be liable, for the reason that it did not transport the cattle into Greenville county, S. C., the prohibited territory, and the anomalous result would follow that, under a statute which expressly punishes the act of transporting cattle from a quarantined territory into prohibited territory, neither the initial nor the terminal carrier could be held liable. The true construction is that, where cattle are consigned as a through shipment from a point in the quarantined area to a point in prohibited territory, each railroad which participates in the transportation of such shipment is liable under the act. Whether the Southern Railway Company, the connecting and delivering company, may defend itself upon the ground that it had no knowledge, or means of knowledge, that the car containing the cattle was shipped from quarantined territory, is a question which may arise upon the trial. There can be no doubt that the Southern Railway in this transaction was engaged in interstate commerce.

"Every part of every transportation of articles of commerce in a continuous passage, from an inception in one state to a prescribed destination in another, is a transaction of interstate commerce. Their transportation never ceases to be a transaction of interstate commerce from its inception in one state until the delivery of the goods at their prescribed destination in the other, and every one who participates in it, who carries the goods through any part of their continuous passage, unavoidably engages in interstate commerce." United States v. C. & N. R. Co., 157 Fed. 321, 323, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167; The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999; Rhodes v. Iowa, 170 U. S. 412, 418, 419, 426, 18 Sup. Ct. 664, 42 L. Ed. 1088; Kelley v. Rhoads, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. Ed. 359; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128.

Since the act of March 3, 1905, and the regulations set forth in the indictment, prohibit cattle from being transported from Alabama into the county of Greenville, S. C., it practically amounts to a prohibition of any interstate traffic in cattle between those points; and as the Southern Railway was certainly engaged in this interstate traffic when they transported the cattle from Atlanta, Ga., to Greenville, S. C., it is difficult to see why it should not be held to have violated the act, and regulations made thereunder. If the contention of the defendant in this case is correct, then there are other rules and regulations of the Secretary of Agriculture concerning the interstate shipment of cattle from quarantined areas which could be violated with impunity by connecting or terminal carriers. No violation of the rules and regulations now referred to is alleged in this case; but they may be adverted to for the purpose of showing to what extent the construction of the act contended for by the defendant would tend to defeat the

purpose of the act and to destroy the efficacy of the rules which the Secretary is authorized by the act to make and promulgate.

The rules and regulations referred to permit the interstate shipment by rail from the quarantined area to recognized slaughtering centers of live stock intended for immediate slaughter, provided, among other things, that placards of a prescribed description and size are affixed to the cars containing the animals, and the waybills, shipping memoranda, etc., are annotated with certain words. The object of these regulations is to insure that the live stock, when unloaded en route for food, water, and rest in states not infected, or transferred to other cars, shall be kept separate from cattle of the noninfected area, and not be placed in pens, cars, etc., used for cattle of the free area. These rules and regulations require, further, that whenever said shipments are turned over to another transportation company, or are transferred into other cars, or are rebilled or reconsigned at a point other than the original destination, the cars in which the live stock are transferred, and the new waybills, shipping memoranda, etc., relating to said shipments, shall be placarded and annotated as in the case of the cars first containing the animals and the billing covering the same. If for any reason the placards required by the regulations are removed from the car, or are destroyed or rendered illegible, they shall be immediately replaced by the transportation company at the time in possession of the shipment; the intent being that placards shall be maintained on the cars from the time of shipment until they arrive at destination. To accomplish the object and purpose of the act, the prevention of the dissemination of contagious, infectious, or communicable diseases of live stock, therefore, it will be readily apparent that it is of equal or greater importance to control the transportation of live stock in the hands of subsequent and connecting carriers as the receiving and transportation by initial carriers.

The defendant argues that, as the act provides that "no railroad company," etc., "shall receive for transportation," etc., it shows an intention upon the part of Congress to make the initial carrier alone liable; and this appears to be in large measure the ground upon which the decision was based in U. S. v. Chicago, B. & Q. R. Co. (D. C.) 181 Fed. 882. This argument, however, overlooks the fact that, while the act makes the receiving for transportation an offense, it expressly provides further that the act of transportation itself shall constitute an offense.

It is also contended that the offense of transportation is complete as soon as the first carrier crosses the state line; but under the facts of the indictment in the case at bar the offense which is charged, namely, transportation from Alabama into Greenville county, S. C., was not complete until the cattle arrived within the prohibited territory. There is nothing in the indictment, nor in the rules and regulations, to show that it was any offense on the part of the Nashville, Chattanooga & St. Louis Railway Company to transport cattle from Alabama to Atlanta, Ga.; but, on the contrary, the indictment and rules and regulations show that the offense denounced was transporting from Alabama into certain counties of South Carolina, Green

ville county being one of the counties into which such importation was prohibited. The whole offense charged in the indictment was transportation from Alabama into Greenville county, S. C. The defendant company is liable, because it transported the cattle from Atlanta, Ga., to Greenville, S. C., when the cattle came originally from Alabama under a through shipment or consignment. Each road took part in the unlawful transportation, and each should be liable.

As it is contended that this is a penal statute, and must be strictly construed, it may be well to quote some observations of Mr. Justice Story in Taylor v. United States, 3 How. 210, 11 L. Ed. 559:

"In one sense every law imposing a penalty or forfeiture may be deemed a penal law; in another sense such laws are often deemed and truly deserve to be called, remedial. The judge was therefore strictly accurate when he stated that 'it must not be understood that every law which imposes a penalty is therefore, legally speaking, a penal law; that is a law which is to be construed with great strictness in favor of the defendant.' Laws enacted for the prevention of fraud, or for the suppression of a public wrong, or to effect a public good, are not in the strict sense penal acts, although they may inflict a penalty for violating them."

The interpretation of this statute as given above does not seem to present any serious difficulty. The object of the act is to prevent the spread of contagious, infectious, or communicable disease among cattle. This is a highly proper purpose. It is in every sense a remedial statute, and should be so construed as most effectually to accomplish the intention of the Legislature in enacting it. The indictment sets forth facts which tend to show a violation of the act on the part of the defendant company, and the demurrer cannot be sustained.

An order in the usual form overruling it will therefore be entered.