WILLIAM R. SCHARTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66939.    Promulgated April 18, 1935.

*Maurice Palais, Esq.*, for the petitioner.
*F. R. Schearer, Esq.*, for the respondent.

## OPINION.

SMITH: At the hearing of this proceeding the petitioner made three contentions which are not specifically made in the petition, viz:

(a) That the assessment and collection of deficiencies in income tax for 1926 and 1927 was barred by the statute of limitations;

(b) That the Board is precluded from redetermining the liabilities therein by reason of the fact that the petitioner was indicted for having filed false and fraudulent income tax returns for 1926 and 1927, which indictment was quashed by the District Court of Massachusetts, whose judgment was affirmed in *United States* v. *Scharton*, 285 U. S. 518; and

(c) That liabilities for deficiencies and penalties for 1926 and 1927 have been discharged by reason of the fact that he and the respondent "had an accord and satisfaction by the acceptance" by the respondent of the sum of $8,692.10 in September, 1931, in full settlement of all claims against the petitioner relating to income taxes and penalties due for those years.

1. To meet the claim of the petitioner that the deficiencies for 1926 and 1927 are not barred by the statute of limitations, the respondent has submitted in evidence a series of waivers, all executed

464

by the petitioner, extending the statute of limitations to December 31, 1932. Prior to that date and on July 11, 1932, the petition in this proceeding was filed. It should be noted, however, that the bar of the statute of limitations does not run against false and fraudulent returns. Section 278 of the Revenue Act of 1926.

2. The present proceeding relates to deficiencies in income tax for 1926 and 1927 and to penalties imposed, by section 275 (b) of the Revenue Act of 1926, which provides:

If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.

It is the petitioner's contention that the quashing of the indictment in the criminal proceeding, *United States* v. *Scharton, supra*, is a bar to the imposition of the penalties provided for in section 275 (b) of the statute.

The penalties provided by section 275 (b) are civil and not criminal penalties. They are aids in collecting revenue. *Ely & Walker Dry Goods Co.* v. *United States*, 34 Fed. (2d) 429; *Thomas J. McLaughlin*, 29 B. T. A. 247; *Henry S. Kerbaugh*, 29 B. T. A. 1014; *McDowell* v. *Heiner*, 9 Fed. (2d) 120; affd., 15 Fed. (2d) 1015; certiorari denied, 273 U. S. 759. See also *United States* v. *Stowell*, 133 U. S. 1; *Louis Ginsburg*, 13 B. T. A. 417; *Taylor* v. *United States*, 3 How. 197; *Murphy* v. *United States*, 272 U. S. 630. The question for decision herein not being the same as that involved in the criminal case, no estoppel by judgment arises. *Tait* v. *Western Maryland Rwy. Co.*, 289 U. S. 620; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Hanby* v. *Commissioner*, 67 Fed. (2d) 125.

Even if the quashing of the indictment in the criminal proceeding might be said to be a judgment of acquittal, it is not *res judicata* in this proceeding. It is not even admissible as evidence of the truth or falsity of the facts decided in the prior proceeding. See *Coffey* v. *United States*, 116 U. S. 436; *Stone* v. *United States*, 167 U. S. 178; 34 Corpus Juris 971; 15 Ruling Case Law 1000–1003, and cases cited.

The contention upon this point is not sustained.

3. The contention of the petitioner that liabilities for deficiencies and penalties for 1926 and 1927 have been discharged because he and the respondent " had an accord and satisfaction by the acceptance " by the respondent of an amount offered in compromise is without merit. The proof shows that the offers in compromise were rejected by the respondent. There was no acceptance of those offers. Hence, there was no " accord and satisfaction " of the tax deficiencies and penalties. The contention of the petitioner upon this point is not sustained.

4. From his gross income for 1926, the petitioner omitted $50,000 debenture stock of E. I. duPont de Nemours & Co. received in part payment of a fee from Annie Rogers duPont, and also $16,000 of the $36,000 cash fees received from the same individual.

The proof shows that the petitioner called to the attention of David Lasker, the attorney employed by him to make out his income tax return for 1926, the receipt of the duPont stock. Lasker thought the amount should be included in the petitioner's gross income. He desired, however, to secure the advice of his associate, Julius Nelson, a more experienced attorney in income tax law. The petitioner and Lasker both went to Nelson's office and discussed with him whether the value of such stock should be included in the petitioner's gross income for 1926. With regard to this conference Nelson testified as follows:

Q Well, tell us what the facts are. Will you state them, as you recall it?

A I remember the original settlement and the amount of the settlement and the amount of money that you got, and subsequently the turning over to you of certain bonds, and the request of Mrs. duPont that you hold those bonds and try to obtain the fee from Mr. duPont, which you agreed to try to do.

Q Was there anything said in relation to whether or not those $50,000 worth of bonds received by the petitioner were to be included in the return as income for that year?

A As I knew the facts, and as you asked me the question, my advice to you was that it wasn't obliged to be returned for that year.

Q And what reasons did you assign for your advice, if any?

A My reasons for that were that it wasn't received by you in payment. You were to hold those bonds in escrow and attempt to get from Mr. William duPont your fee; and as good faith on her part, to show that she wasn't reneging, those bonds were given to you with the express purpose, to you, to hold them until such time as you had exhausted your ability to get the money from Mr. duPont, she having assured you, and you assuring me, there wouldn't be much question but that you could obtain that fee from him.

By the way, my opinion has not changed, either, in 1934; I don't think it was returnable income.

The evidence shows that the facts with respect to the receipt of this stock were misrepresented to Nelson by the petitioner. In December 1925 or January 1926 the petitioner sent a bill to Annie Rogers duPont for his fee of $180,000. She had hoped that she would be able to persuade her husband to pay at least a part of this bill. Not later than January 1926 Mrs. duPont wrote the petitioner in part as follows:

I received your letter and bill today. Unfortunately Mr. duPont will not, at present at any rate, help me pay it. Would it be satisfactory if I sent you at once $50,000 duPont bonds, 6 per cent, and pay the remainder out of my allowance by degrees, $4,000 a quarter until the remaining $130,000 are paid?

Subsequent thereto and in January 1926, Mrs. duPont sent the petitioner her personal check for $20,000 and certificate Nos. H 9160–4 for 500 shares of E. I. duPont deNemours & Co. debenture stock. The petitioner immediately had the stock registered in his name and thereafter received the dividends thereon.

The petitioner then sent a contract regarding his fee to Mrs. duPont, then in London, for her signature, which reads as follows:

WHEREAS, William R. Scharton, my attorney, was successful in procuring for me a settlement in re duPont v. du Pont, by a trust agreement dated January 2, 1926, whereby I have received two hundred thousand ($200,000) dollars in cash and a trust fund of eight thousand ($8,000) dollars annually in quarterly payments. I, Annie Rogers duPont, do hereby agree to pay to the said William R. Scharton, my attorney, for legal services rendered for me in the above matter, the sum of one hundred and eighty thousand ($180,000) dollars, payable in the following manner, twenty thousand ($20,000) dollars by check dated January 13, 1926, and five hundred (500) shares of Debenture Stock, Certificates Nos. H 9160–4, in the amount of fifty thousand ($50,000) dollars, and the balance of one hundred and ten thousand ($110,000) dollars to be paid at the rate of four thousand ($4,000) dollars quarterly until the full sum of one hundred and ten thousand ($110,000) dollars and interest is paid, the first payment of four thousand ($4,000) dollars to be made on or before March 25, 1926, and a like payment of four thousand ($4,000) dollars on the fifteenth day of every quarter thereafter.

It is further agreed between the said William R. Scharton and myself that I have the right to pay the balance in a lump sum at any time which I wish or am able to do so.

On February 14, 1926, Mrs. duPont wrote the petitioner from London in part that "I enclose the papers you sent me signed." Mrs. duPont died in January 1927. On June 28, 1927, the petitioner sent a bill to the estate of Annie Rogers duPont for his fee of $180,000 in which he gave credit for having received on account cash, $36,000, and debenture stock, $50,000. The balance shown to be due was $94,000, plus interest from December 24, 1925.

At the time the petitioner had his conference with Nelson in the spring of 1927, Mrs. duPont was dead. He knew at that time that there was no ground for any claim that Mrs. duPont would ever redeem the stock. Furthermore, the correspondence had with Mrs. duPont by the petitioner shows that the debenture stock was received by the petitioner in part payment of the $180,000 fee owed by Mrs. duPont.

Clearly the value of the duPont stock received by the petitioner constituted a part of the petitioner's gross income for either 1926 or 1927. *Crowell* v. *Commissioner*, 62 Fed. (2d) 51; *Olsen* v. *Commissioner*, 67 Fed. (2d) 726. It was not returned as a part of petitioner's income for 1927 and the petitioner filed no amended return for 1926 including the stock as income for that year. When asked why the value of the stock was not included

in gross income for 1927, the petitioner replied that he thought he was not required to include it in income until he sold it. This testimony is not believed.

In view of the fact that the petitioner never reported the receipt of the stock as income and in view of the proof that the stock was received by the petitioner in part payment of his fee in 1926, we are of the opinion that the petitioner's income tax return for 1926 was false and fraudulent and filed with intent to evade tax within the meaning of section 275 (b) of the Revenue Act of 1926.

In part payment of his $180,000 fee charged Mrs. duPont, the petitioner in 1926 received cash in the amount of $36,000. Of this amount he included in gross income in his income tax return only $20,000. His reason for not including the balance was that he had an understanding with George Zinn, Mrs. duPont's son, that he would pay him a percentage of his fee in consideration of services rendered by Zinn in securing petitioner's employment by his mother. The testimony upon this point is confusing. The petitioner was much in the company of Zinn. He stated that his oral agreement with Zinn was to pay him 50 percent of the fee received from his mother, and pursuant to this agreement he did pay him $10,000 out of the first $20,000 cash received. Petitioner then testified that he made an arrangement with Zinn that Zinn should receive only 25 percent of each additional cash payment, and that pursuant to that agreement he paid him $1,500 out of each $4,000 installment received. This made $16,000 the total payments to Zinn during 1926.

The petitioner also testified that it was his expectation originally that he could secure for Annie Rogers duPont a trust fund of $5,000,-000, in which event Zinn would be well provided for by his mother; that when he found he could obtain for his client a trust fund of only $1,800,000, he felt under some obligation to Zinn and it was for that reason that he agreed to pay Zinn a portion of the cash fees received from Mrs. duPont.

From a consideration of all the evidence upon this point it is somewhat doubtful whether the $16,000 paid to Zinn represented anything more than gratuities. Zinn was not an attorney and the evidence does not show what the nature of the services, if any, rendered by Zinn to the petitioner were. At any rate we are satisfied that they were not ordinary and necessary expenses incurred in the carrying on of the petitioner's trade or business, and hence are not deductible from gross income. Cf. *Welch* v. *Helvering*, 290 U. S. 111.

The petitioner claims the right to deduct from gross income of 1926 numerous small items which he claims were not deducted on the original return or allowed as deductions by the respondent in the determination of the tax deficiency. Among these are

amounts paid to Julius Nelson. The petitioner was of the opinion that such payments to Nelson were for services rendered. But Nelson testified that the petitioner was in error in making such a claim; that they represented repayments of loans made by Nelson to the petitioner or else represented moneys paid to Nelson to be paid over to other persons in settlement of claims made by such other persons against the petitioner, the nature of which is not in evidence.

Among them also was a payment of $1,000 to James Saulsbury, an attorney of Wilmington, Delaware. This amount was not claimed as a deduction on the original return or allowed by the respondent in the determination of the deficiency. The contention of the petitioner is sustained. The proof shows that this amount was paid for services and was a proper charge against fees received in 1926.

The petitioner's claims for further deductions from gross income are not sustained.

From a consideration of all of the evidence relating to the petitioner's income tax return for 1926, we sustain the respondent's determination that the return was false and fraudulent and filed with an intent to evade tax.

5. The petitioner's income tax return for 1927 was prepared by Joseph S. Luther, a certified public accountant. The work sheets used by Luther, which were introduced in evidence, show the manner in which he, under the direction of the petitioner, prepared the return. The petitioner told Luther that he had received two fees in 1927 as follows:

Cash from estate of Annie Rogers duPont_____ $90,000
Fees from Zinn case_____ 20,000

　　Total _____ 110,000

A preliminary work sheet indicates that the petitioner also declared the receipt of fees from various sources totaling $5,400. But Luther determined gross income of $72,500 by deducting from $110,000, $37,500. The petitioner testified that he did not know why this deduction was made; Luther testified that he was informed by the petitioner that that represented a portion of his fees received by others. The petitioner did not advise Luther of the receipt in 1927 of a fee of $28,000 from the settlement of the Whipple-Searles case.

The petitioner claims that his reason for not including in his gross income for 1927 the amount of $28,000 received upon the settlement of the Whipple-Searles case is that his brother, Victor, claimed that he was entitled to a part of it. The petitioner's brother was not an attorney, but was employed by the petitioner in his office at a salary of $50 per week. The basis of the claim of Victor to a share of the $28,000 fee is not disclosed by the evidence. After the correctness of earlier returns had been called in question by the respondent, the

petitioner returned, for 1929, $23,000 of the $28,000 received in 1927 from the settlement of the Whipple-Searles case. The petitioner testified that his brother's claim to a part of the fee was settled in 1929 by the petitioner paying $5,000 to Victor.

The evidence shows the receipt of gross fees by the petitioner in 1927 of $156,175. There is no color of excuse for the petitioner not having returned that amount. Not only is there no excuse for not having returned the fee of $28,000 received on the settlement of the Whipple-Searles case, but there is no excuse for having reported to Luther that $37,500 of the $110,000 declared was received by others.

Out of the $30,750 fee received in the Zinn case, $10,000 was paid to George W. Lilly for services performed in connection with the settlement of petitioner's claim against the estate of Annie Rogers duPont. In reality the $10,000 fee to Lilly was a charge against the $90,000 received from the duPont estate and not a charge against the petitioner's fee from the Zinn case.

In addition to the deductions allowed by the respondent in the determination of the deficiency, the Board has found from the evidence that the petitioner is entitled to the deduction of $14,500 representing amounts paid to attorneys in Wilmington, Delaware, in connection with the settlement of cases there from which he received his fees in the duPont estate and in the Zinn case.

In addition to the deductions from the gross income of 1927 herein allowed the petitioner in the amount of $54,371.34, the petitioner claims the deduction of certain other items, one of $10,400 representing a loan to Galbo & Co. in 1920 or 1921. The deduction of this item was not claimed on the petitioner's income tax return. The evidence shows that the account was proved to be worthless long prior to 1927. The petitioner contends, however, that, in view of the fact that the statute of limitations had not run against the notes which he held until 1927, he is entitled to deduct the amount from gross income. The pertinent provision of the statute, however, permits the deduction from gross income of " debts ascertained to be worthless and charged off within the taxable year." Sec. 214 (a) (7), Revenue Act of 1926. Since the $10,400 item in question was not claimed as a deduction from gross income in the income tax return filed for 1927, and since there is no evidence that it was charged off by the petitioner in 1927, the petitioner's claim in respect thereof is not sustained.

The petitioner also claims the deduction of numerous small items which he paid out in 1927. We cannot, however, determine from the record that such amounts were not claimed as deductions in the petitioner's income tax return for 1927 for which he was given credit in the computation of the deficiency. Such claims are, therefore, not sustained.

From the foregoing it is apparent that the petitioner's income tax return for 1927 grossly understated the amount of both his gross income and his net income. The petitioner did not file an amended return to show the true amount of his net income. The $28,000 fee received in 1927 from the Whipple-Searles case was not accounted for except in the 1929 income tax return. But this was not until after the correctness of his returns for prior years had been questioned by the respondent's agents.

The petitioner kept no books of account or records from which his returns could be readily verified. It was only after painstaking and costly investigations that the respondent discovered the undisclosed income.

It is inconceivable that the petitioner did not know that his returns for both 1926 and 1927 were false when he filed them. They grossly understated both gross and net incomes and the taxes paid thereon were only small fractions of the amounts legally due. The only conclusion that can reasonably be drawn from the facts proved is that the false returns were filed with an intent to evade tax. The determination of the respondent that the 50 percent addition to the deficiencies provided for by section 275 (b) of the Revenue Act of 1926 is due from the petitioner in respect of deficiencies for 1926 and 1927 is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*