**C. C. CO. v. UNITED STATES.**

No. 10962.

Circuit Court of Appeals, Fifth Circuit.

Oct. 30, 1944.

Rehearing Granted Dec. 12, 1944.

On Rehearing Jan. 20, 1945.

S. E. Morse, of Gulfport, Miss., for appellant.

T. Hoyt Davis, U. S. Atty., and John P. Cowart, Asst. U. S. Atty., both of Macon, Ga., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The appellee by separate proceedings in rem sought to condemn two interstate shipments of canned oysters packed by appellant at its plant in Biloxi, Mississippi. One shipment of 179 cases, each containing 48 cans of "C. C. Brand Oysters," was consigned to Webb-Crawford Company, Athens, Georgia, and the other shipment of 49 cases, each containing 48 cans of "C. C. Brand Oysters," was consigned to Thornton Grocery Company, Elberton, Georgia. The actions, brought under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., were consolidated for trial and tried to the court without a jury. The court found that one lot of oysters, code number 4J70, was not adulterated, was fit for food, and ordered it released. The remaining lots were found adulterated, unfit for food, and were ordered destroyed. The sole issue is whether the oysters were adulterated in violation of 21 U.S.C.A. § 342(a) (3) in that they were wholly or partially decomposed.

The Federal Food, Drug, and Cosmetic Act, after providing for condemnation proceedings by libel, with reference to procedure, provides:

"The article shall be liable to seizure by process pursuant to the libel, and the procedure in cases under this section shall conform, as nearly as may be, to the procedure in admiralty; except that on demand of either party any issue of fact joined in any such case shall be tried by jury. * * *" 21 U.S.C.A. § 334(b).

The rule in this court in admiralty cases is that the hearing on appeal is de novo, and that it is the appellate court's duty to review the whole case and make such decree as ought to have been made. Pavlis et al. v. Jackson, 5 Cir., 131 F.2d 362; Coryell v. Phipps, 5 Cir., 128 F.2d 702, 704.

Where forfeiture of private property is sought, as is here sought by the Government, "a higher degree of proof than a mere preponderance, a mere balance of evidence in favor of the Government, is required. It is necessary, in a case like this, that the Government should establish, by clear and satisfactory evidence, that its case has been made out." Van Camp Sea Food Co. v. United States, 3 Cir., 82 F.2d 365, 366.

To prove its case, the Government offered the testimony of two officers: Dr. Albert C. Hunter, Chief of the Bacteriological Division of the Food, Drug, and Cosmetic Administration; and Raymond L. Vandeveer, Chief Chemist in charge of the New Orleans office of the same Administration. Both witnesses examined the oysters organoleptically, that is, smelled them. Each can was carefully opened, the liquid drained off into a pan, and "then the oysters were very carefully smelled and examined." Both agreed that in appearance the oysters were perfectly normal.

Dr. Hunter examined a total of 168 sample cans from the Webb-Crawford Company shipment and found 12 cans, or 7%, definitely rotten and 4 cans, or about 2%, with some degree of decomposition; the remaining cans he classed as passable. He examined 48 sample cans from the Thornton Grocery Company shipment and found one can definitely decomposed. The "off" oysters were from code numbers 4J80 and 4J90. Oysters from code number 4J70 were normal in appearance and smell.

Mr. Vandeveer examined 24 sample cans of oysters from the Webb-Crawford shipment and 48 cans from the Thornton Grocery Company shipment. Both sample lots contained cans from each code number. Of the 24 samples examined, he pronounced about 24% bad; and of the 48 samples examined, he pronounced 14% rotten, 4% slightly decomposed.

The evidence makes clear, however, that oysters from sandy bottoms, from mud bottoms, and from reefs near the mouth of the Mississippi River are packed in appellant's plant at Biloxi, Mississippi; and that the odor of an oyster or of any other sea food depends on the area from which it is caught. An oyster from a sandy bottom has an odor different from that of an oyster from a mud bottom, and an oyster from near the mouth of the Mississippi River has an odor reflecting contact with sulphur, not found in oysters from sandy or mud bottoms. This characteristic of oysters was testified to by every witness introduced by either party who gave evidence respecting the fitness of the oysters here involved for food.

Dr. Hunter also admitted that whether the odor of an oyster reflected good or bad condition was a matter of personal judgment. Mr. Vandeveer, who testified that he trained his sense of smell by using experimental packs of oysters "packaged at different stages of decomposition," admitted that men who daily handle sea foods for a livelihood develop through their work a high sense of smell.

Following the seizure of the oysters, appellant obtained 164 sample cans and had them examined by the research department of the American Can Company Southern, in New Orleans. The Government offered in evidence a copy of the report of that examination, in which it was stated that the appearance of the oysters was comparable to that of oysters in normal cans, but that of the 60 cans coded 4J80 and of the 19 cans coded 4J90, "eleven cans in each lot had an abnormal odor comparable to that associated with oysters which have undergone partial decomposition before canning." Upon the suggestion of the trial judge, the depositions of Mr. Lamberton and Mr. Riester, employees of the American Can Company who had made the test, were taken. In explanation of the language in the report, Mr. Lamberton said:

"I believe that the statement there intended not to show that the oysters were decomposed, but, as stated, there was an odor there which we have associated with oyster decomposition. The particular oysters in those samples themselves, we were remarking only about the odor of the oysters."

Lamberton and Riester in making their test opened the cans, smelled the liquid, poured off the liquid, placed the oysters on a rack and smelled them, then crushed the oysters in the hands and smelled them. Only when the oysters were crushed in the hands was there an "off" odor. They testified as follows:

"Q. In checking code 4J70 in regard to appearance and odor, the cans were normal in every respect? A. Yes, sir.

"Q. Both from a standpoint of odor and after crushing? A. Yes, sir. * * *

"Q. What was the only time with reference to code 4J80 that any abnormal or off odor was noticed, Mr. Riester? A. When the oysters were picked up in the hand and crushed and smelled with the nose close to the oyster. * * *

"Q. With reference to Code 4J90, were you able to detect abnormal or off odor when these cans were opened? A. Only by crushing."

Neither Lamberton nor Riester could say what caused the odor in the oysters they crushed.

Mr. Lamberton said:

"Q. You still could not state, Mr. Lamberton, whether the odor that you got came from the ground where the oysters were feeding, which was on the mud flats in the sulphur bottom, or whether it came from decomposition? A. I could not state that. I defined the odor as similar to decomposition, but could not say definitely that I know it was decomposition or anything else."

Mr. Riester said:

"Q. In these cases where you have not been able to detect the odor until after you have crushed an oyster and crushed its intestines and its body, it is possible, is it not, for any off odor or abnormal odor to come from whatever food the oyster has eaten while on the bottom of the water? A. That is correct."

Appellant's witnesses were all identified with the oyster-packing business in and around Biloxi, with years of experience in that business. Elmer Williams was with the DeJean Packing Company, one of the largest independent plants in the United States, and had been in its employ twenty-two to twenty-three years. Nick Mavar was with the Mavar Shrimp & Oyster Company, another large company. C. A. Delacruz was mayor of Biloxi and manager of the Southern Shell Fish Company, owned by the Wesson Oil Company, and had been in the sea food business some

thirty-five years. William Cruso was president of the C. C. Company, appellant, and had been in the oyster-packing business since the close of the first World War. All of them told of odors given off by oysters caught on sandy bottoms, on mud bottoms, and from near the mouth of the Mississippi River where sulphur was present. All of them stated that an oyster from a sandy bottom had a normal odor; from a mud bottom, a slightly decomposed odor; and from near the mouth of the Mississippi River, a sulphur odor. They stated that the method of packing oysters and the equipment used by appellant were sanitary and standard. According to the testimony of these witnesses, each boat-load of oysters packed at the packing plants were coded separately; sometimes the boat-load came from one bed, ofttimes from several different beds; the boats went out and returned on schedule and were manned by experienced crews who, receiving no pay for bad oysters, consequently watched the catch and brought them in before deterioration; and the oysters were inspected as they were unloaded and inspected again as they passed through the plant. All the witnesses were positive that few if any bad oysters were ever packed in cans.

At the request of appellant, a cross section of the canned oysters was tested during the trial. One can from code 70, four cans from code 80, and twenty-four cans from code 90, were examined organoleptically by all of the witnesses who testified in court. Dr. Hunter pronounced five of the twenty-four cans from code 90 as decomposed; Mr. Vandeveer found one of the four cans from code 80 decomposed, and six of the twenty-fours cans from code 90 decomposed or partially so. Appellant's witnesses, all experienced oyster packers, were unanimous and positive in pronouncing the oysters good canned oysters, including those in the cans referred to by Dr. Hunter and Mr. Vandeveer as decomposed or partially so. Mr. Mavar offered to eat the oysters said to be decomposed, and Mr. Cruso did eat two of them.

Where a food product is tested for imperfections by the sense of smell, the testimony of men who have had years of experience in handling and processing such product is entitled to at least as much weight as that of Government experts trained by use of "experimental packs" to differentiate between the good and the bad. No test other than that of smell was made by the Government experts, nor did they offer any explanation why other tests were not made. Upon consideration of the whole testimony, we think that the Government has failed to meet the burden resting upon it.

The judgment appealed from is reversed, and the cause is remanded with direction to dismiss the libel.

## On Petition for Rehearing.

PER CURIAM.

It is ordered that the petition for rehearing in the above numbered and entitled cause be, and is hereby, granted on briefs heretofore filed and such briefs as may be filed by the parties hereto within a period of thirty days from this date.

## On Rehearing.

LEE, Circuit Judge.

When this case was submitted to this court on appeal it was asserted in the briefs for both parties that, since the action was to compel a forfeiture, the burden was upon the Government to prove by clear and convincing evidence that the oysters shipped in commerce as food were decomposed in whole or in part. Counsel on the argument stated that this court heard the case in the manner of admiralty appeals by reason of the statutory provision that, in condemnation proceedings under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., the procedure should conform as nearly as may be to the procedure in admiralty.

Acting under these assurances, this court reviewed the evidence in the light of these principles and reached the conclusion that, while there was evidence of a substantial character indicating that the oysters were partially decomposed, the proof on this material issue was not clear and convincing. In our opinion rendered October 30, 1944, the judgment accordingly was reversed and the cause remanded with direction that the libel be dismissed.

Upon petition for rehearing the Government with apologies retracted its former representations relative to the burden of proof, taking the position that it was only obliged to prove its case by a preponderance of the evidence in the trial court, and that

824

the scope of review on appeal was limited, as in other civil cases, by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, requiring that the findings of fact of the trial court be not set aside unless clearly erroneous. These matters being vital to a determination of the appeal, we granted a rehearing.

■ Though such condemnation proceedings conform, as nearly as may be, to the procedure in admiralty in the trial court, it is expressly provided by Rule 81(a)(2) of the Federal Rules of Civil Procedure that said rules govern appeals in proceedings for forfeiture of property for violation of a statute of the United States. Cf. 443 Cans of Frozen Egg Product v. United States, 226 U.S. 172, 33 S.Ct. 50, 57 L.Ed. 174. Therefore the case on appeal is not heard anew, but the findings of fact of the trial court must be accepted as true unless they are clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure.

■■ It is the general rule that statutes imposing forfeitures, being penal in nature, are to be strictly construed in favor of the defendant.[1] The requirement in condemnation cases of a higher degree of proof than a mere preponderance is a natural corollary of this rule of construction.[2] But in United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 505, it was held that statutes enacted for the public good and to suppress a public wrong, although they impose penalties or forfeitures, are not to be construed strictly in favor of the defendant but should be fairly and reasonably construed so as to carry out the intention of Congress.[3] The Federal Food, Drug, and Cosmetic Act was enacted in the interests of the public welfare to protect the public health, and courts must give it effect according to its terms.[4]

■ In our prior opinion we set forth the evidence in detail. It is readily apparent from that discussion that there was substantial evidence to warrant the finding of the

trial court that the oysters were in part decomposed. The decree of condemnation entered thereon was therefore correct.[5] The judgment heretofore entered herein is set aside, and the judgment appealed from is affirmed.

---

[1] Farmers' & Mechanics National Bank v. Dearing, 91 U.S. 29, 23 L.Ed. 196; United States v. One Ford Coach, 307 U. S. 219, 59 S.Ct. 861, 83 L.Ed. 1249; United States v. Lacher, 134 U.S. 624, 10 S. Ct. 625, 33 L.Ed. 1080.

[2] Van Camp Sea Food Company v. United States, 3 Cir., 82 F.2d 365

[3] See also Taylor v. United States, 3 How. 197, 11 L.Ed. 559; United States v. State Bank, 6 Pet. 29, 8 L.Ed. 306; Beaston v. Farmers' Bank, 12 Pet. 102, 9 L.Ed. 1017.

[4] United States v. Antikamnia Company, 231 U.S. 654, 34 S.Ct. 222, 58 L.Ed. 419; United States v. Lexington Mill, etc., Company, 232 U.S. 399, 409, 34 S.Ct. 337, 58 L.Ed. 658, L.R.A.1915B, 774; United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134; A. O. Anderson & Co. v. United States, 9 Cir., 284 F. 542; United States. v. 48 Dozen Packages of Gauze, 2 Cir., 94 F.2d 641; United States v. Research Laboratories, 9 Cir., 126 F.2d 42.

